Exhibit 2

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

PINNACLE AIRLINES CORP., *et al.*,

Debtors.

Chapter 11

Case No. 12-11343 (REG)

(Jointly Administered)

## ORDER PURSUANT TO SECTIONS 105, 361, 362, 364, 365, 502, 1107 AND 1108 OF THE BANKRUPTCY CODE (I) AUTHORIZING DEBTORS TO OBTAIN POST-PETITION FINANCING, (II) GRANTING LIENS AND PROVIDING SUPER-PRIORITY ADMINISTRATIVE EXPENSE STATUS, (III) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES, (IV) AUTHORIZING DEBTORS TO ASSUME CONNECTION AGREEMENTS WITH DELTA AIR LINES, INC., AND (V) ALLOWING GENERAL UNSECURED CLAIM

Upon the motion (the "**Motion**"), dated April 2, 2012, of Pinnacle Airlines Corp. (the "**Company**," "**Pinnacle Holdings,**" or the "**Borrower**") and its affiliated debtors, each as debtor and debtor-in-possession (collectively, the "**Debtors**"), in the above-captioned cases (the "**Chapter 11 Cases**") pursuant to sections 105, 361, 362, 363(c)(2), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), 365, 502(a), 1107, and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "**Bankruptcy Code**"), and Rules 2002, 4001, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), seeking, among other things:

(1)     authorization for the Borrower to obtain post-petition superpriority senior secured multiple draw term loan financing (the "**DIP Facility**"), and for all of the other Debtors (the "**Guarantors**") to guaranty the Borrower's obligations in connection with the DIP Facility, up to the aggregate principal amount of $74,285,000 (the "**Commitment**") (the actual available principal amount at any time being subject

to those conditions set forth in the DIP Financing Documents (as defined below)), from Delta Air Lines, Inc. ("**Delta**") and other institutions selected by Delta (collectively, the "**DIP Lenders**");

(2)     authorization for the Debtors to execute, enter into, and deliver the DIP Financing Documents and to perform such other and further acts as may be required in connection with the DIP Financing Documents;

(3)     until the repayment thereof as hereinafter provided, the granting of adequate protection to Delta (the "**Promissory Note Lender**") under or in connection with that certain Promissory Note, dated as of July 1, 2010 (as heretofore amended, supplemented, or otherwise modified, the "**Promissory Note**"), by and among the Borrower, Pinnacle Airlines, Inc. ("**Pinnacle Inc.**"), Mesaba Aviation, Inc. ("**Mesaba**, and together with the Borrower and Pinnacle Inc., the "**Promissory Note Borrowers**"), and the Promissory Note Lender, and that certain Security and Pledge Agreement, dated as of July 1, 2010, between the Borrower and Delta (as heretofore amended, supplemented, or otherwise modified, the "**Security Agreement**" and, collectively with the Promissory Note, and all other documentation executed in connection therewith the "**Promissory Note Documents**"), whose liens and security interests are being primed by the DIP Facility and authorization for the Debtors to use the Promissory Note Collateral (as defined below);

(4)     authorization for the Debtors to repay the Promissory Note in full including interest through the date of repayment at the non-default contract rate upon (a) the simultaneous release and termination of the Promissory Note's liens, claims, and

encumbrances under the Promissory Note Documents and (b) the agreement of

the Promissory Note Lender to release and terminate any remaining liens, claims,

and encumbrances on account of the Promissory Note Documents in accordance

with this Order; provided that such repayment will remain subject to a specified

period in which the official committee of unsecured creditors appointed in the

Chapter 11 Cases (the "**Creditors' Committee**") may challenge Promissory Note

obligations and liens, and, if challenged, such repayment may be subject to

disgorgement if the Court so rules, all as set forth herein;

(5)    approval of certain stipulations by the Debtors with respect to the Promissory

Note Documents and the liens and security interests arising therefrom;

(6)    the granting of superpriority claims to the DIP Lenders payable from, and having

recourse to the Collateral (as defined below), subject to the Carve-Out (as defined

below);

(7)    the limitation of the Debtors' right to surcharge against collateral pursuant to

section 506(c) of the Bankruptcy Code;

(8)    approval of the Debtors' assumption of the Amended DCA Agreements (as

defined below); and

(9)    allowance of a general unsecured claim for Delta's damages as a result of

modifications to the Amended 2007 CRJ-900 Agreement (as defined below) as

set forth in the Amended 2007 CRJ-900 Agreement in an amount to be

subsequently determined by the Court (the "**Delta Claim**");

and due and appropriate notice of the Motion, the relief requested therein, and the hearing before

this Court (the "**Hearing**") having been served by the Debtors on (i) the Office of the United

3

States Trustee for the Southern District of New York, (ii) counsel for the DIP Lenders, (iii) those

creditors holding the five largest secured claims against the Debtors' estates, (iv) those creditors

holding the 50 largest unsecured claims against the Debtors' estates, (v) those known creditors

holding liens on the Debtors' assets, (vi) the Creditors' Committee, and (vii) the United States

Attorney for the Southern District of New York (collectively, the "**Notice Parties**"), and upon

the record of the Hearing held by this Court on May 16, 2012; and after due deliberation and

consideration and sufficient cause appearing therefor,

IT IS FOUND, DETERMINED, ORDERED, AND ADJUDGED,[1] that:

1.    *Motion Granted*. The Motion is granted in accordance with the terms and

conditions set forth in this Order and the DIP Financing Documents.   Any objections and

reservations of rights included therein, to the extent not withdrawn with prejudice, settled, or

resolved, are hereby overruled on the merits.

2.    *Jurisdiction*.  This Court has core jurisdiction over the Chapter 11 Cases, this

Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.

Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.    *Notice*.  Notice of the Motion, the relief requested therein and the Hearing was

served by the Debtors on the Notice Parties.

4.    *Debtors' Stipulations*.   After consultation with their attorneys and financial

advisors, and without prejudice to the rights of any other party (but subject to the limitations

thereon contained in paragraphs 16 and 22 below), the Debtors admit, stipulate, acknowledge,

and agree that:

---

[1]    Any and all findings of fact shall constitute finding of fact even if they are stated as conclusions of law, and
any and all conclusions of law shall constitute conclusions of law even if they are stated as findings of fact.

(a)    (i) as of the filing of the Debtors' chapter 11 petitions (the "**Petition Date**"), the Promissory Note Borrowers were indebted and liable to the Promissory Note Lender, without defense, counterclaim, or offset of any kind, in the aggregate principal amount of $44,285,046.40 in respect of the Promissory Note Documents, plus accrued interest thereon and costs, expenses (including any attorneys', accountants', appraisers', and financial advisors' fees and expenses that are chargeable or reimbursable under the Promissory Note Documents), charges, and other obligations incurred in connection therewith as provided in the Promissory Note Documents (collectively, the "**Promissory Note Debt**"), (ii) the Promissory Note Debt constitutes the legal, valid, and binding obligation of the Promissory Note Borrowers, enforceable in accordance with its terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), and (iii) no portion of the Promissory Note Debt is subject to avoidance, recharacterization, recovery, or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law;

(b)    the liens and security interests granted to the Promissory Note Lender pursuant to and in connection with the Promissory Note Documents  (i) are valid, binding, perfected, enforceable, first-priority liens and security interests in the collateral described in the Promissory Note Documents (the "**Promissory Note Collateral**"); (ii) are not subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law; and (iii) secure, without limitation, the Debtors' indemnity obligations to the Promissory Note Lender under the Promissory Note Documents; and

(c)    a portion of the Debtors' borrowings from the DIP Lenders under the DIP Credit Agreement (as defined below) and this Order will be used to repay in full the Promissory Note in accordance with the terms and conditions set forth in this Order; and, subject to the terms

and conditions contained herein (including, without limitation, the priming liens granted hereunder subject to the Carve-Out), any and all prepetition or post-petition liens and security interests (including, without limitation, any adequate protection replacement liens at any time granted to the Promissory Note Lender by this Court) that the Promissory Note Lender has or may have in the Promissory Note Collateral or with respect to post-petition liens and security interests (including, without limitation, any adequate protection replacement liens at any time granted to the Promissory Note Lender by this Court) on any other assets and properties of the Debtors and their estates shall (i) unless otherwise ordered by the Court, continue to secure any unpaid portion of any Promissory Note Debt (including, without limitation, any Promissory Note Debt subsequently reinstated after the repayment thereof because such payment (or any portion thereof) is required to be returned or repaid to the Debtors or the DIP Lenders and the liens securing the Promissory Note Debt shall have not been avoided) and (ii) be junior and subordinate in all respects to the DIP Lenders' liens on and security interests in the Collateral (including, without limitation, the DIP Liens (as defined below)) granted under this Order and the DIP Financing Documents.

    5.    *Findings Regarding the DIP Facility.*

        (a)    Good cause has been shown for the entry of this Order.

        (b)    The Debtors have an immediate need to obtain the DIP Facility and use Collateral in order to permit the Debtors (i) to provide working capital for, and for other general corporate purposes of, the Borrower and its subsidiaries, including the payment of expenses of administration in the Chapter 11 Cases, (ii) to repay in full the Promissory Note, and (iii) to pay the costs and expenses of the DIP Lenders, in each case in accordance with the Budget (as defined in the DIP Credit Agreement).  The access of the Debtors to sufficient working capital,

incurrence of new indebtedness for borrowed money, and other financial accommodations is vital to the preservation and maintenance of the going concern values of the Debtors and to a successful reorganization of the Debtors.

(c)     The Debtors are unable to obtain financing on more favorable terms from sources other than the DIP Lenders under the DIP Financing Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Debtors are also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2), and 364(c)(3) of the Bankruptcy Code (i) without the Debtors granting to the DIP Lenders, subject to the Carve-Out as provided for herein, the DIP Liens, and the Superpriority Claims (as defined below) under the terms and conditions set forth in this Order and in the DIP Financing Documents and (ii) repaying the Promissory Note Debt in full upon entry of this Order, such repayment being a requirement by the DIP Lenders for the DIP Facility.

(d)     The terms of the DIP Facility are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and constitute reasonably equivalent value and fair consideration.

(e)     The DIP Facility has been negotiated in good faith and at arm's length among the Debtors and the DIP Lenders, and all of the Debtors' obligations and indebtedness arising under, in respect of, or in connection with the DIP Facility and the DIP Financing Documents, including, without limitation, (i) all loans made to the Debtors pursuant to the credit agreement (the "**DIP Credit Agreement**") substantially in the form filed on the docket and (ii) any Obligations (as defined in the DIP Credit Agreement) (all of the foregoing in clauses (i) and (ii) collectively, the "**DIP Obligations**"), shall be deemed to have been extended by the DIP

7

Lenders and their affiliates in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Order or any provision hereof is vacated, reversed, or modified, on appeal or otherwise.

6.    *Authorization of the DIP Facility, the DIP Financing Documents, and the Repayment of the Promissory Note Debt.*

(a)    The Debtors are hereby authorized to enter into the DIP Financing Documents and are authorized and directed to repay the Promissory Note Debt.  The Borrower is hereby authorized to borrow money pursuant to the DIP Credit Agreement, and the Guarantors are hereby authorized to guaranty such borrowings, up to an aggregate principal or face amount of $74,285,000 (plus interest, fees, costs, and other expenses and amounts provided for in the DIP Financing Documents), in accordance with the terms of this Order and the DIP Financing Documents, which shall be used for all purposes permitted under the DIP Financing Documents, including, without limitation, (i) to provide working capital for, and for other general corporate purposes of, Borrower and its subsidiaries, including the payment of expenses of administration in the Chapter 11 Cases, (ii) to repay in full the Promissory Note Debt, and (iii) to pay the costs and expenses of the DIP Lenders, in each case in accordance with the Budget.

(b)    The Borrowers shall pay (i) all reasonable fees and expenses of the DIP Lenders associated with the preparation, execution, delivery and administration of the DIP Financing Documents and any amendment or waiver with respect thereto (including the fees, disbursements and other charges of counsel, including local, conflicts and special counsel as necessary, and financial advisors for the DIP Lenders), (ii) all expenses of the DIP Lenders

(including the fees, disbursements and other charges of counsel, including local, conflicts and special counsel for the DIP Lenders, and financial advisors) in connection with the enforcement of the DIP Financing Documents and (iii) all expenses associated with collateral monitoring, collateral reviews and appraisals, environmental reviews and fees and expenses of other advisors and professionals engaged by the DIP Lenders (collectively, "**Lender Professionals**").  Lender Professionals receiving payment of fees and expenses under this paragraph shall not be required to comply with the U.S. Trustee fee guidelines but they shall submit copies of invoices to the U.S. Trustee.   Once five business days has passed from the delivery of such invoices to the U.S. Trustee, the Debtors shall timely pay in accordance with the terms and conditions of this Order the invoiced fees and expenses of any such Lender Professional.

(c)   In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized and directed to perform all acts, to make, execute, and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages, and financing statements), and to pay all costs that may be reasonably required or necessary for the Debtors' performance of their obligations under the DIP Facility, including, without limitation:

(i)   the execution, delivery, and performance of the DIP Documents (as defined in the DIP Credit Agreement) and any exhibits attached thereto, including, without limitation, the DIP Credit Agreement, all related documents, and any mortgages contemplated thereby (collectively, the "**DIP Financing Documents**");

(ii)   the execution, delivery, and performance of one or more amendments to the DIP Credit Agreement for, among other things, the purpose of adding additional financial institutions as DIP Lenders and reallocating the commitments for the DIP

9

Facility among the DIP Lenders, in each case in such form as the Debtors and the DIP Lenders may agree (it being understood that no further approval of the Court shall be required for amendments to the DIP Credit Agreement (and any fees paid in connection therewith) that do not increase the aggregate commitments thereunder or require any fees to be paid in connection therewith);

(iii)     the payment to the DIP Lenders of the costs and expenses referred to in the DIP Credit Agreement (it being understood that any such payment shall be non-refundable) and reasonable costs and expenses as may be due from time to time, including, without limitation, fees and expenses of the professionals retained as provided for in the DIP Financing Documents, Kirkland & Ellis LLP and Blackstone Advisory Partners L.P., without the necessity of filing retention motions or fee applications; and

(iv)     the performance of all other acts required under or in connection with the DIP Financing Documents.

(d)     Upon execution and delivery of the DIP Financing Documents, the DIP Financing Documents shall constitute valid and binding obligations of the Debtors, enforceable against each Debtor party thereto in accordance with the terms of the DIP Financing Documents and this Order.  No obligation, payment, transfer, or grant of security under the DIP Financing Documents or this Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law (including without limitation, under section 502(d) of the Bankruptcy Code), or subject to any defense, reduction, setoff, recoupment, or counterclaim; *provided*, *however*, that in the event that there is a timely successful challenge, pursuant and subject to the limitations contained in paragraph 16 hereof, to the validity, enforceability, extent, perfection, or priority of the Promissory Note Debt that the Court shall

10

have the power to unwind or otherwise modify, after notice and hearing, the repayment of the

Promissory Note Debt or a portion thereof (which might include the disgorgement or

re-allocation of interest, costs, principal, or other incremental consideration paid in respect of the

Promissory Note Debt or the avoidance of liens and/or guarantees with respect to one or more of

the Debtors), as the Court shall determine.

       7.    *Superpriority Claims.*

       (a)    Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP

Obligations shall constitute allowed claims against the Debtors with priority over any and all

administrative expenses, diminution claims (including all Adequate Protection Claims), and all

other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever,

including, without limitation, all administrative expenses of the kind specified in sections 503(b)

and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims

arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 1113, or 1114 of

the Bankruptcy Code (the "**Superpriority Claims**"), whether or not such expenses or claims

may become secured by a judgment lien or other non-consensual lien, levy, or attachment, which

allowed claims shall be payable from and have recourse to all prepetition and post-petition

property of the Debtors and all proceeds thereof, subject only to the Carve-Out to the extent

specifically provided for herein.

       (b)    For purposes hereof, the "**Carve-Out**" shall be comprised of the

following: (i) the unpaid fees of the Clerk of the Bankruptcy Court and the U.S. Trustee

pursuant to 28 U.S.C. §1930(a)(6), and any interest accruing on the unpaid fees of the U.S.

Trustee pursuant to 31 U.S.C. §3717, and (ii) the payment of (x) all fees, disbursements, costs,

and expenses which are incurred before the Funding Termination Date (as defined in the DIP

Financing Documents) and after the Petition Date for each Professional (as defined below), less

any amount actually paid to each such Professional retained by the Debtors or any statutory

committees appointed in the case (each a "**Committee**") pursuant to Bankruptcy Code sections

327, 328, 330, 331, 503, or 1102 (collectively, the "**Professionals**") to the extent allowed at any

time by the Bankruptcy Court, whether by interim order, procedural order, or otherwise,  and

owed pursuant to the Professionals' respective engagement letters; (y) (1) fees and expenses of

the Debtors' Professionals, in an aggregate amount not to exceed $2.0 million, and (2) fees and

expenses of any chapter 7 trustee appointed or elected for any of the Debtors, in an aggregate

amount not to exceed $100,000 (collectively, the "**Termination Carve-Out**"), which are

incurred after the Funding Termination Date, with respect to the Professionals, such fees and

expenses are ultimately allowed by the Bankruptcy Court, each subject to the rights of any party

in interest to object to the allowance of any such fees and expenses sought by Professionals in

clauses (x) and (y) hereof.  Notwithstanding anything to the contrary, an amount equal to the

Termination Carve-Out shall be reserved against the Commitment.  Upon the occurrence of a

Funding Termination Date, an amount equal to the Termination Carve-Out shall be funded in a

segregated escrow account solely to fund the Carve-Out.  Notwithstanding the foregoing, no

portion of the Carve-Out or proceeds of the DIP Facility may be used in connection with the

investigation (including, without limitation, discovery proceedings), initiation or prosecution of

any claims, causes of action, objections, or other litigation against the DIP Lenders or the

Promissory Note Lender, including, but not limited to, (i) with respect to raising any defense to

the validity, perfection, priority, extent, or enforceability of the obligations under the DIP

Facility and/or the Promissory Note including the liens with respect thereto and (ii) with respect

to pursuing any potential claims against the DIP Lenders or the Promissory Note Lender (or their

respective predecessors-in-interest, agents, affiliates, representatives, attorneys, or advisors)
asserting or alleging any claims including, but not limited to, "lender liability"-type claims or
causes of action, causes of actions under chapter 5 of the Bankruptcy Code (including under
section 502(d) of the Bankruptcy Code), or any other claims or causes of action under, or in any
way otherwise relating to, the DIP Financing Documents, the DIP Facility, the Promissory Note,
the Amended DCA Agreements (as defined below); provided that up to $50,000 in the aggregate
may be used to reimburse any Committee for the reasonable costs and out-of-pocket expenses
incurred in connection with the investigation of the validity, perfection, and/or priority of the
liens securing the Promissory Note.

8.    *DIP Liens.*  As security for the DIP Obligations, effective and perfected upon the
date of this Order and without the necessity of the execution, recordation of filings by the
Debtors of mortgages, security agreements, control agreements, pledge agreements, financing
statements, or other similar documents, or the possession or control by the DIP Lenders of, or
over, any Collateral (as defined below), the following security interests and liens are hereby
granted to the DIP Lenders (all property identified in clauses (a), (b), and (c) below being
collectively referred to as the "**Collateral**"), subject, only in the event of the occurrence of a
Funding Termination Date, to the funding of the Termination Carve-Out (all such liens and
security interests granted to the DIP Lenders, for its benefit and for the benefit of the Credit
Parties (as defined in the DIP Credit Agreement) pursuant to this Order and the DIP Financing
Documents, the "**DIP Liens**"):

(a)    First Lien on Unencumbered Property.  Pursuant to section 364(c)(2) of
the Bankruptcy Code, a perfected first priority lien on all now owned or hereafter acquired
tangible and intangible assets and property of the Debtors whether existing on the Petition Date

13

or thereafter acquired, that, on or as of the Petition Date (or as a result of the refinancing of the

Promissory Note Debt) is not subject to valid, perfected, and non-avoidable liens, including,

without limitation, accounts, documents, goods, inventory, equipment, capital stock in

subsidiaries and joint ventures , investment property, instruments, chattel paper, commercial tort

claims, cash, cash equivalents, securities accounts, deposit accounts, commodity accounts, real

estate, leasehold interests, gate leaseholds, slots, airframes, engines, spare engines, spare parts,

contracts, patents, copyrights, trademarks, causes of action (excluding avoidance actions), and

other general intangibles (including, without limitation, tax refunds, and payment intangibles,

and all products and proceeds thereof (including proceeds of avoidance actions), excluding only

the Collateral that is an Excluded Section 1110 Asset (as defined below) or applicable law

precludes granting such lien;

(b)     <u>Liens Priming Promissory Note Lender's Liens</u>.   Pursuant to section

364(d)(1) of the Bankruptcy Code, a perfected first-priority priming lien on the Promissory Note

Collateral (the "**Primed Liens**"), all of which Primed Liens shall be primed by and made subject

and subordinate with respect to the Promissory Note Collateral to the perfected first priority

senior liens to be granted to the DIP Lenders, which senior priming liens in favor of the DIP

Lenders shall also prime any liens granted after the commencement of the Chapter 11 Cases to

provide adequate protection in respect of any of the Primed Liens;

(c)     <u>Liens Junior to Certain Other Liens</u>.   Pursuant to section 364(c)(3) of the

Bankruptcy Code, be secured by a perfected junior lien on all Collateral, to the extent that such

Collateral is subject to valid, perfected, and non-avoidable liens in favor of third parties in

existence at the time of the commencement of the Chapter 11 Cases or to valid liens in existence

at the time of such commencement that are perfected subsequent to such commencement as

14

permitted by section 546(b) of the Bankruptcy Code (other than property that is subject to the existing liens that secure the obligations under the Promissory Note, which liens shall be primed by the liens securing the obligations under the DIP Financing Documents in accordance with the terms of the DIP Financing Documents excluding only the Collateral that is an Excluded Section 1110 Asset  or applicable law precludes granting such lien (the "**Existing Liens**");

(d)    <u>Liens Senior to Certain Other Liens</u>.  The DIP Liens and the Adequate Protection Liens shall not be subject or subordinate to (i) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (ii) any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal, or other governmental unit, commission, board, or court for any liability of the Debtors, unless the lien is a statutory lien that arises under applicable nonbankruptcy law and is determined by the Court to be senior to the DIP Liens, and the Adequate Protection Liens.

9.    *Protection of DIP Lenders' Rights.*

(a)    The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit the DIP Lenders to exercise, upon the occurrence and continuance of an Event of Default (as defined in the DIP Credit Agreement) and five business days' prior written notice (which shall run concurrently with any notice provided under the DIP Financing Documents) to the Debtors, counsel to the Debtors, counsel to any Committee, and to the U.S. Trustee, all rights and remedies under the DIP Financing Documents.

(b)    In any hearing regarding any exercise of rights or remedies, the only issue that may be raised by any party in opposition thereto shall be whether, in fact, an Event of

Default (as defined in the DIP Credit Agreement) has occurred and is continuing, and the Debtors shall not be entitled to seek relief, including, without limitation, under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of the DIP Lenders set forth in this Order or the DIP Financing Documents. In no event shall the DIP Lenders be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral.

10. *Equities of the Case Waiver*. The DIP Lenders shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code. No person may assert an "equities of the case" claim under section 552(b) of the Bankruptcy Code against the DIP Lenders with respect to proceeds, product, offspring, or profits of any of the Collateral.

11. *Limitation on Charging Expenses Against Collateral*. Except to the extent of the Carve-Out, no expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Collateral or the Promissory Note Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Lenders or the Promissory Note Lender, as the case may be, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Lenders or the Promissory Note Lender.

12. *Adequate Protection on Account of the Promissory Note*. Pursuant to sections 361, 363(e), and 364(d)(1) of the Bankruptcy Code, and to the extent the Promissory Note is not repaid in full with proceeds of the DIP Facility, the Promissory Note Lender shall be granted the following adequate protection (collectively, the "**Adequate Protection**") of its prepetition security interests for, and equal in amount to, but without duplication, the diminution in the value

16

(each such diminution, a "**Diminution in Value**") of the prepetition security interests of such Promissory Note Lender, whether or not such Diminution in Value results from the sale, lease, or use by the Debtors of the Promissory Note Collateral, the priming of the prepetition security interests of such Promissory Note Lender, or the stay of enforcement of any prepetition security interest arising from section 362 of the Bankruptcy Code, or otherwise (the Promissory Note Lender consents to the priming liens securing the DIP Facility in accordance with the terms of this Order):

(a)     Adequate Protection Liens.  As security for and solely to the extent of any Diminution in Value of the prepetition security interests, the Promissory Note Lender shall be granted for its benefit valid, enforceable, nonavoidable, and fully perfected, as of the date of the entry of this Order and without the necessity of the execution of mortgages, security agreements, pledge agreements, financing statements, or other agreements, post-petition security interests in and liens on the Collateral (together, the "**Adequate Protection Liens**"), subject and subordinate only to (x) the Carve-Out, (y) the liens securing the DIP Facility and (z) any Existing Liens;

(b)     Superpriority Claim.  To the extent of any Diminution in Value of the prepetition security interests, the Promissory Note Lender shall be granted, subject to the payment of the Carve-Out, a superpriority administrative expense claim as provided for in section 507(b) of the Bankruptcy Code, immediately junior to the claims under section 364(c)(1) of the Bankruptcy Code held by the DIP Lenders under the DIP Facility, provided that the Promissory Note Lender shall not receive or retain any payments, property, or other amounts in respect of the superpriority claims under section 507(b) of the Bankruptcy Code granted hereunder or under the Promissory Note Documents unless and until the obligations under the DIP Facility have indefeasibly been paid in cash in full (the "**Adequate Protection Claim**");

(c)      <u>Current Payments of Interest and Costs</u>.   The Promissory Note Lender shall receive from the Debtors current cash payments of interest on the Promissory Note, calculated at the rates, in the manner and at the times provided in the Promissory Note (provided, however, that interest shall accrue and be paid at the default rate) and fees and expense reimbursements (the payments due hereunder and the Adequate Protection Claim, collectively the "**Adequate Protection Obligations**").   The first payment to the Promissory Note Lender under this clause (c) shall include any and all accrued but unpaid interest as of the date of commencement of the Chapter 11 Cases plus any and all interest that would have accrued from the commencement of the Chapter 11 Cases through and including the date of such first payment plus fees and expense reimbursements.

13.      *No Waiver; Reservation of Rights*.   Except as otherwise specifically set forth herein, the Promissory Note Lender does not waive any rights or priorities it may have under the Promissory Note Documents and expressly reserves all of the rights available to it under the Promissory Note Documents, the Bankruptcy Code, or any other applicable law.

14.      *Perfection of DIP Liens and Adequate Protection Liens.*

(a)      Subject to the provisions of paragraph 9(a) above, the DIP Lenders and the Promissory Note Lender are hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien, or similar instruments in any jurisdiction, or take possession of or control over, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder.   Whether or not the DIP Lenders or the Promissory Note Lender shall, in their sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien, or similar instruments, or take possession of or control over, or otherwise confirm perfection of the liens

18

and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable, and not subject to challenge, dispute, or subordination, at the time and on the date of entry of this Order.  Upon the request of the DIP Lenders and the Promissory Note Lender, without any further consent of any party, the DIP Lender is authorized to take, execute, deliver, and file such instruments (in each case without representation or warranty of any kind) to enable the DIP Lenders to further validate, perfect, preserve, and enforce the DIP Liens.

(b)      A certified copy of this Order may, in the discretion of the DIP Lenders, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien, or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Order for filing and recording.

(c)      Any provision of any lease, license, contract, or other agreement that requires (i) the consent or approval of one or more landlords or other parties or (ii) the payment of any fees or obligations to any governmental entity, in order for any Debtor to pledge, grant, sell, assign, or otherwise transfer any such lease, license, contract, or other agreement, or the proceeds thereof, or other post-petition collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code.  Any such provision shall have no force and effect with respect to the transactions granting post-petition liens in such lease, license, contract,  or other agreement, or the proceeds of any assignment and/or sale thereof by any Debtor, in favor of the DIP Lenders and the Promissory Note Lender in accordance with the terms of the DIP Financing Documents or this Order.

19

15.     *Preservation of Rights Granted Under the Order.*

(a)     Except as otherwise provided for herein, no claim or lien having a priority superior to or *pari passu* with those granted by this Order to the DIP Lenders and the Promissory Note Lender, respectively, shall be granted or allowed while any portion of the Promissory Note Debt, the DIP Facility (or any refinancing thereof) or the Commitments thereunder, or the DIP Obligations, or the Adequate Protection Obligations remain outstanding, and the DIP Liens and the Adequate Protection Liens shall not be (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or (ii) subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise, in each case other than the Carve-Out.

(b)     Unless all DIP Obligations shall have been indefeasibly paid in full in cash and the Promissory Note Debt, and Adequate Protection Obligations shall have been paid in full in cash, the Debtors shall not seek (i) any modifications or extensions of this Order without the prior written consent of the DIP Lenders, and no such consent shall be implied by any other action, inaction, or acquiescence by the DIP Lenders or (ii) an order converting or dismissing any of the Chapter 11 Cases.  If an order dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (i) the Superpriority Claims, priming liens, security interests, and replacement security interests granted to the DIP Lenders and, as applicable, the Promissory Note Lender pursuant to this Order shall continue in full force and effect and shall maintain their priorities as provided in this Order until all DIP Obligations, Promissory Note Debt, and Adequate Protection Obligations shall have been paid and satisfied in

20

full (and that such Superpriority Claims, priming liens, and replacement security interests, shall, notwithstanding such dismissal, remain binding on all parties in interest) and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens, and security interests referred to in (i) above.

(c)    If any or all of the provisions of this Order are hereafter reversed, modified, vacated, or stayed, such reversal, stay, modification, or vacation shall not affect (i) the validity of any DIP Obligations, Promissory Note Debt, or Adequate Protection Obligations incurred prior to the actual receipt of written notice by the DIP Lenders or Promissory Note Lender, as applicable, of the effective date of such reversal, stay, modification, or vacation or (ii) the validity or enforceability of any lien or priority authorized or created hereby or pursuant to the DIP Credit Agreement with respect to any DIP Obligations, Promissory Note Debt, or Adequate Protection Obligations.  Notwithstanding any such reversal, stay, modification, or vacation, any DIP Obligations, Promissory Note Debt, or Adequate Protection Obligations incurred by the Debtors to the DIP Lenders or the Promissory Note Lender prior to the actual receipt of written notice by the DIP Lenders and Promissory Note Lender of the effective date of such reversal, stay, modification, or vacation shall be governed in all respects by the original provisions of this Order, and the DIP Lenders and Promissory Note Lender shall be entitled to all the rights, remedies, privileges, and benefits granted in section 364(e) of the Bankruptcy Code (including, without limitation, in respect of any payments received in connection with the refinancing of the Promissory Note Debt), this Order, and pursuant to the DIP Financing Documents with respect to all DIP Obligations, and  Adequate Protection Obligations.

(d)    Except as expressly provided in this Order or in the DIP Financing Documents, the DIP Liens, the Superpriority Claims, and all other rights and remedies of the DIP

Lenders granted by the provisions of this Order and the DIP Financing Documents shall survive, and shall not be modified, impaired, or discharged by (i) the entry of an order converting any of the Chapter 11 Cases to a case under chapter 7, dismissing any of the Chapter 11 Cases, terminating the joint administration of these Chapter 11 Cases, or by any other act or omission, (ii) the entry of an order approving the sale of any Collateral pursuant to section 363(b) of the Bankruptcy Code (except to the extent permitted by the DIP Documents), or (iii) the entry of an order confirming a plan of reorganization in any of the Chapter 11 Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining DIP Obligations. The terms and provisions of this Order and the DIP Financing Documents shall continue in the Chapter 11 Cases, in any successor cases if the Chapter 11 Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Liens, the Superpriority Claims, and all other rights and remedies of the DIP Lenders granted by the provisions of this Order and the DIP Financing Documents shall continue in full force and effect until the DIP Obligations are indefeasibly paid in full.

16.    *Effect of Stipulations on Third Parties*. The stipulations and admissions contained in this Order, including, without limitation, in paragraph 4 of this Order, shall be binding upon the Debtors and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors) in all circumstances. The stipulations and admissions contained in this Order, including, without limitation, in paragraph 4 of this Order, shall be binding upon all other parties in interest, including, without limitation, any Committee appointed in the Chapter 11 Cases or any other person or entity acting on behalf of the Debtors' estates, unless (a) (i) a party in interest has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein) by the date that is 75 days (or a longer period

for cause shown before the expiration of such period) after the entry of this order; *provided*,

*however*, the Creditors' Committee shall have 90 days from the date of the order approving the

appointment of counsel for the Creditors' Committee to make such a filing, or (ii) if such a

challenge or claim is brought, the entry of a final judgment in favor of the Promissory Note

Lender as has been agreed to, in writing, by the Promissory Note Lender in its sole discretion or

as has been ordered by the Court (the "**Challenge Period**") (x) challenging the validity,

enforceability, priority, or extent of the Promissory Note Debt or of the Promissory Note

Lender's liens on the Promissory Note Collateral or (y) otherwise asserting or prosecuting any

action for preferences, fraudulent conveyances, other avoidance power claims, or any other any

claims, counterclaims, or causes of action, objections, contests, or defenses (collectively,

"**Claims and Defenses**") against the Promissory Note Lender or its affiliates, representatives,

attorneys, or advisors in connection with matters related to the Promissory Note Documents, the

Promissory Note Debt, the Promissory Note Collateral, and (b) there is a final order in favor of

the plaintiff sustaining any such challenge or claim in any such timely filed adversary proceeding

or contested matter; *provided, however,* that, (i) as to the Debtors, all such rights to bring such

Claims and Defenses are hereby irrevocably waived and relinquished as of the Petition Date and

(ii) any challenge or claim shall set forth with specificity the basis for such challenge or claim

and any challenges or claims not so specified prior to the expiration of the Challenge Period shall

be forever deemed waived, released, and barred.  Notwithstanding the foregoing, the Creditors'

Committee shall have standing to commence any such an action, including the Claims and the

Defenses, without the need to file a motion with this Court seeking standing to bring such action

on behalf of the Debtors' estates, *provided, however*, that the Creditors' Committee will give the

Debtors at least one business day's prior written notice of its intention to file such an action with

this Court.  If no such adversary proceeding or contested matter is filed, (x) to the extent not

theretofore repaid, the Promissory Note Debt shall constitute an allowed claim, not subject to

counterclaim, setoff, subordination, recharacterization, defense, or avoidance, for all purposes in

the Chapter 11 Cases and any subsequent chapter 7 cases, (y) the liens and security interests

under the Promissory Note Documents, and the Adequate Protection Liens on the Promissory

Note Collateral shall be deemed to have been, as of the Petition Date, legal, valid, binding, and

perfected, not subject to recharacterization, subordination, or avoidance, and such liens shall not

be subject to any other or further challenge by any party in interest seeking to exercise the rights

of the Debtors' estates, including, without limitation, any successor thereto (including, without

limitation, any chapter 7 or 11 trustee appointed or elected for any of the Debtors), and (z) the

repayment of the Promissory Note Debt shall be irrevocable and shall not be subject to

restitution, disgorgement, or any other challenge under any circumstances, including, without

limitation, pursuant to any Claims and Defenses.  If any such adversary proceeding or contested

matter is timely filed, the stipulations and admissions contained in paragraph 4 of this Order shall

nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph)

on any Committee and on any other person or entity, except to the extent that such findings and

admissions were expressly challenged in such adversary proceeding or contested matter.

Nothing in this Order vests or confers on any Person (as defined in the Bankruptcy Code),

including any Committee (other than the Creditors' Committee as set forth above), standing or

authority to pursue any cause of action belonging to the Debtors or their estates, including,

without limitation, Claims and Defenses with respect to the Promissory Note Documents or the

Promissory Note Debt.

17.    *Excluded Section 1110 Assets.*

24

(a)     <u>No Waiver of Section 1110 Beneficiary Rights</u>.  Nothing in this Order or

the DIP Financing Documents (i) shall constitute a waiver, forbearance or adjudication of the

rights of any secured party, lessor or vendor, or of any trustee, agent or controlling party for any

such entity (including, without limitation, any servicer or beneficial owner of any lessor and

including any secured party, lessor or vendor under any aircraft lease or mortgage) (in each case,

an "**1110 Beneficiary**") under section 1110 of the Bankruptcy Code. or (ii) shall prejudice, limit

or otherwise affect any rights of any 1110 Beneficiary or other entity under section 1110 of the

Bankruptcy Code, all of which rights are expressly preserved.

(b)     <u>Limitation on Liens in Excluded Section 1110 Assets</u>.  Notwithstanding

any provision to the contrary in this Order or the DIP Financing Documents, to the extent

prohibited or restricted under any Section 1110 Agreement (as defined below), the DIP Lenders

(I) shall not by this Order or the DIP Financing Documents be granted liens on, or security

interests in, (i) any of the Excluded Section 1110 Assets (as defined below), (ii) any lease of, or

any Debtor's leasehold interest in, the Excluded Section 1110 Assets, or (iii) any other property

or Section 1110 Agreement which is subject to the rights of an 1110 Beneficiary under section

1110 of the Bankruptcy Code; (II) shall not be listed as a loss payee, as an additional insured or

contract party on any insurance policy which the Debtors are obligated to any 1110 Beneficiary

to obtain or maintain on or with respect to any Excluded Section 1110 Assets; (III) shall not, by

virtue of this Order or the DIP Financing Documents, be entitled to exercise, assert or otherwise

have the benefits of any rights or interests of any Debtor under any lease of the Excluded Section

1110 Assets or property described in clause (I) of this paragraph, including rights, or interests in,

or to any sums payable to, any Debtor under any lease of the Excluded Section 1110 Assets or

property described in clause (I) and rights or interests in or to any property held under such lease;

25

(IV) shall not be given, and the Debtors likewise shall not place, placards or other indicia of security interests or liens in or on any Excluded Section 1110 Assets or property described in clause (I) above in favor of the DIP Lenders; and (V) to the extent that any liens are granted hereunder in any Excluded Section 1110 Assets or Section 1110 Agreements, such liens shall be "silent" liens such that the DIP Lenders shall have not have the right to exercise any remedies with respect thereto until the obligations under the relevant Section 1110 Agreements have been satisfied and paid in full; *provided*, *however*, that the proceeds, if any, received by any Debtor on account of any Excluded Section 1110 Asset shall be subject to the DIP Liens and Adequate Protection Liens; and *provided*, *further*, *however*, that pursuant to Section 3.23(b) (iii) of the DIP Credit Agreement, without the consent of the DIP Lenders, the Debtors shall not grant any claim or lien in any Excluded Section 1110 Asset to any entity other than the DIP Lenders, except for any adequate protection liens expressly permitted under Section 6.18(b) of the Credit Agreement while any portion of the Promissory Note Debt, the DIP Facility (or any refinancing thereof) or the Commitments thereunder, or the DIP Obligation or the Adequate Protection Obligations remain outstanding.

(c)     The term "**Excluded Section 1110 Asset**" shall mean any interest of the Debtors in (i) any equipment described in section 1110(a)(3) of the Bankruptcy Code and any substitutions, renewals and replacements thereof, and any improvements, accessions and accumulations incident thereto, (ii) any other asset with respect to which the granting of any lien would cause a default, directly or indirectly, of any Section 1110 Agreement and (iii) any deposit or reserve delivered by a Debtor to a Section 1110 Beneficiary in connection with the purchase, finance or lease of an Excluded Section 1110 Asset, to the extent that there is a restriction or prohibition in the related Section 1110 Agreement on the granting of any liens or assignments;

26

provided that the DIP Liens shall attach automatically to any reversionary or residual interest any Debtor may have in such deposit or reserve upon the satisfaction of the obligations secured thereby.

(d) The term "**Section 1110 Agreement**" shall mean any agreement related to the Excluded Section 1110 Assets, including, without limitation, security agreements, mortgages, trusts, leases, conditional sale agreements or other instruments applicable to such Excluded Section 1110 Assets.

18. *Use of DIP Facility and Collateral.*

(a) <u>Permitted Uses</u>. In accordance with the terms of the DIP Credit Agreement, the Debtors shall use the DIP Facility, pursuant to the Budget, (i) to provide working capital for, and for other general corporate purposes of, the Borrower and its subsidiaries, including the payment of expenses of administration in the Chapter 11 Cases, (ii) to repay in full the Promissory Note, and (iii) to pay the costs and expenses of the DIP Lenders, in each case in accordance with the budget under the DIP Financing Documents.

(b) <u>Limitations on Use</u>. Notwithstanding anything herein or in any other order by this Court to the contrary, no borrowings, Collateral, or the Carve-Out may be used to (i) object, contest, or raise any defense to, the validity, perfection, priority, extent, or enforceability of any amount due under the DIP Financing Documents or the Promissory Note Documents, or the liens or claims granted under this Order, the DIP Financing Documents or the Promissory Note Documents, (ii) assert any Claims and Defenses or causes of action against the DIP Lenders or the Promissory Note Lender or their respective agents, affiliates, representatives, attorneys, or advisors, (iii) prevent, hinder, or otherwise delay the DIP Lenders' assertion, enforcement or realization on the Collateral in accordance with the DIP Financing Documents or

27

this Order, (iv) seek to modify any of the rights granted to the DIP Lenders or the Promissory

Note Lender hereunder or under the DIP Financing Documents or the Promissory Note

Documents, in each of the foregoing cases without such parties' prior written consent, or (v) pay

any amount on account of any claims arising prior to the Petition Date unless such payments are

(1) approved by an order of this Court (including hereunder) and (2) in accordance with the DIP

Credit Agreement and any relevant budgets; *provided, however,* that advisors to the Creditors'

Committee may investigate the liens granted pursuant to the Promissory Note Documents and,

subject to any applicable law with respect to standing, commence and prosecute any related

proceedings as a representative of the Debtors' estates at an aggregate expense for such

investigation and prosecution not to exceed $50,000.

19.    *Indemnity and Release from Liability.*

(a)    The DIP Lenders (and their affiliates and their respective officers,

directors, employees, advisors, and agents) will have no liability for, and will be

indemnified and held harmless against, any loss, liability, cost, or expense incurred in

respect of the DIP Facility contemplated hereby or the use or the proposed use of

proceeds thereof; *provided, however*, that the Debtors shall have no obligation to

indemnify any indemnified person against any such loss, liability, cost, or expense to the

extent its arises from the gross negligence or willful misconduct of such indemnified

party as determined by a final and non-appealable order of a court of competent

jurisdiction.  The DIP Lenders shall not be responsible or liable to any Debtors, any of its

subsidiaries, or any other person for special, consequential, or punitive damages.

(b)    The DIP Lenders, effective immediately, and the Promissory Note

Lender, effective only upon the expiry of the Challenge Period, are hereby released from

28

liability for all claims and causes of action existing as of the Petition Date arising out of or relating to the DIP Facility, the Promissory Note Documents, and all other agreements, certificates, instruments, and other documents and statements related thereto. Notwithstanding anything to the contrary herein, claims, causes of action and rights to payment that Standard Aero Ltd. ( "**Standard Aero**") has, may have, that may arise or that Standard Aero may assert against Delta and/or the Debtors under agreements between Standard Aero, Delta, and/or the Debtors and applicable law are not being released, waived or modified.

20.     *Order Governs*.  In the event of any inconsistency between the provisions of this Order and the DIP Financing Documents, the provisions of this Order shall govern.

21.     *DIP Lenders Not Responsible Persons*.  In (a) making the decision to provide the DIP Facility; (b) administering the DIP Facility; (c) extending related financial accommodations to the Debtors; and (d) making the decision to collect the indebtedness and obligations of the Debtors, the DIP Lenders shall not be considered to be exercising control over any operations of the Debtors or acting in any way as a "responsible person," or as an "owner or operator" with respect to the operation or management of the Debtors, so long as the actions of the DIP Lenders do not constitute within the meaning of 42 U.S.C. § 9601(20)(F), actual participation in the management or operational affairs of a facility owned or operated by a Debtor, or otherwise cause liability to arise to the federal or state government or the status of responsible person or managing agent to exist under applicable law (as such terms, or any similar terms, are used in the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. 9601, *et seq.*, the Resource Conservation and Recovery Act, 42 U.S.C. 6901, *et seq.*, as either may be amended from time to time, or any similar federal, state, or local law, statute, or ordinance).

29

22. *Binding Effect; Successors and Assigns.* The DIP Financing Documents and the provisions of this Order, including, but not limited to, all findings herein, shall be binding upon all parties in interest in the Chapter 11 Cases, including, without limitation, the DIP Lenders and the Promissory Note Lender, any Committee, and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors) and shall inure to the benefit of the DIP Lenders, the Promissory Note Lender, and the Debtors and their respective successors and assigns; *provided*, *however*, that the DIP Lenders shall have no obligation to extend any financing to any chapter 7 trustee or similar responsible person appointed for the estates of the Debtors.

23. *Assumption of the Amended Flying Agreements.* Pursuant to section 365 of the Bankruptcy Code, the Debtors' assumption of (a) the Amended 2007 CRJ-900 Agreement as further amended by the third amendment to the 2007 DCA (the "**Amended 2007 DCA**"), (b) that certain Amended and Restated Delta Connection Agreement, which amends the 2010 DCA (the "**Amended and Restated 2010 DCA**"), and (c) that certain Fourth Amended and Restated Airline Services Agreement, which amends and restates the Amended and Restated CRJ-200 Agreement (the "**Amended and Restated ASA**," and together with the Amended 2007 DCA and the Amended and Restated 2010 DCA, the "**Amended DCA Agreements**"), all of which were filed with the Court under seal pursuant to an order of this Court [Docket 26], is hereby approved.

24. *DIP Lender's Unsecured Claim.* The Delta Claim is hereby allowed as a general unsecured claim for damages as a result of the modifications to the 2007 DCA as set forth in the Amended 2007 DCA, in an amount to be subsequently determined by the Court. The Delta Claim will be treated solely as a general unsecured claim, and Delta shall receive a distribution

30

on account of such claim identical to the distributions received by other holders of allowed general unsecured claims. The amount of the Delta Claim need not be cured in connection with the assumption of the Amended DCA Agreements, and the amount of the Delta Claim will not be offset against any amounts owed by Delta to the Company.

25.     Any determination regarding Delta's reasonableness in exercising its approval rights under either Milestone 5 or 6 on Annex F to the DIP Credit Agreement shall be made by this Court.

26.     The statements made on the record at the Hearing by Delta's counsel regarding the Court's need for flexibility regarding  the deadline for ruling on an 1113 motion set forth in Milestone 6 on Annex F of the DIP  Credit Agreement are incorporated herein by reference.

27.     The requirements set forth in Bankruptcy Role 6003 are satisfied by the contents of the Motion or otherwise deemed waived

28.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such motion and the requirements of Bankruptcy Rule 6004(a) and the Local Bankruptcy Rules for the Southern District of New York are satisfied by such notice.

29.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

30.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

31.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

31

32.     This Order shall be governed by the rules of construction set forth in section 102 of the Bankruptcy Code.

Dated:    May **_17_**, 2012
          New York, New York

/s/**_Robert E. Gerber_**

UNITED STATES BANKRUPTCY JUDGE