# EXHIBIT 1

PINNACLE AIRLINES 1113(c) RESTRUCTURING PROPOSAL TO
THE ASSOCIATION OF FLIGHT ATTENDANTS - CWA
AUGUST 16, 2012
TERM SHEET

| | |
|---|---|
| **OBJECTIVE** | This Term Sheet sets forth the basic terms of the Company's Section 1113 (c) Proposal which provides for necessary modifications to the parties' existing Collective Bargaining Agreement between AFA - CWA and Pinnacle Airlines (the "Basic Agreement") that are necessary to permit the reorganization of the Company. The parties will amend the Basic Agreement and related side letters of agreements, and execute such other documents as may be needed, to accomplish the following modifications.<br><br>Items marked with an asterisk (*) in this term sheet are contingent upon a consensual Collective Bargaining Agreement, i.e. they will become effective as described only upon the effective date of a new Collective Bargaining Agreement between Pinnacle Airlines and AFA - CWA. |
| **DURATION**<br>Section 20 | Amendable December 31, 2018 |
| **COMPENSATION**<br>Section 18 | See Attachment A – "Compensation" |
| **PROFIT SHARING** | See Attachment B – "Profit Sharing Plan"* |
| **SCOPE**<br>Section 1 | See Attachment C – "Merger Language" |
| **WORK RULES**<br><br>Scheduled Minimum Work Days for Part-Time Flight Attendants<br>Sections 5.D.3 & 5.D.4 | 1. Increase part-time lines from 6 days scheduled per bid month to 8 days per bid month. |
| Posting of Open Time<br>Section 5.G | 2. Eliminate the requirement to post/publish open time. The Company would be able to hold open trips for assignment. |
| Co-domiciles | 3. Allow metropolitan co-domiciles system-wide (See Attachment D). |
| Vacation Accrual<br>Section 14. A.3 | 4. Revise vacation accrual chart in section 14.A.3 as follows:<br><br>| Longevity Date | Vacation Hours Accrued Per Month for Use in the Following Calendar Year |<br>|---|---|<br>| One Year | 1.75 |<br>| Two Years | 1.75 |<br>| Five Years | 3.50 |<br>| Thirteen Years | 5.25 | |

PINNACLE AIRLINES 1113(c) RESTRUCTURING PROPOSAL TO
THE ASSOCIATION OF FLIGHT ATTENDANTS - CWA
AUGUST 16, 2012
TERM SHEET

| | |
|---|---|
| Uniform Allowance Section 15.D.1 | 5. Reduce annual uniform allowance for full-time and part-time Flight Attendants by twenty-five ($25.00) |
| Per Diem Section 18.C | 6. Reduce per diem rates to match ALPA proposal<br>$1.60 – effective on DOS through 12/31/15<br>$1.65 – effective 1/1/16 through 12/31/16<br>$1.70 – effective 1/1/17<br><br>7. The Company shall not pay per diem when scheduled time away from base is less than twenty-four (24) hours. |
| US Customs Credit Section 18.I | 8. Delete Paragraph 18.I and eliminate all references to customs credit. |
| Deadhead Pay Section 19.B; 19.C | 9. 50% pay and credit for deadhead. Replace all references to 75% deadhead pay with 50%. |
| **BENEFITS** | See Attachment E – "Benefits and Retirement" |
| **SENIORITY INTEGRATION** | The parties agree to the Seniority Integration Provisions set forth in Attachment C. |
| **FINAL CONTRACT LANGUAGE** | While this Term Sheet sets forth binding agreements of Pinnacle Airlines and AFA - CWA, it does not necessarily represent what the parties would desire as final contract language.  The parties agree that they will meet and confer to determine whether final contract language, whether in the form of a letter of agreement or amendments to the basic Pinnacle Airlines Flight Attendant Agreements, is necessary and, if so, that they will draft final contract language and execute the resulting agreements within forty-five (45) days of execution of this Term Sheet unless otherwise agreed. |

PINNACLE AIRLINES 1113(c) RESTRUCTURING PROPOSAL TO
THE ASSOCIATION OF FLIGHT ATTENDANTS - CWA
AUGUST 16, 2012
TERM SHEET

## ATTACHMENT A

### "Compensation"

1. Pay Rates
   See rate tables included on page A-2.

   a. Increase rates as follows:
      | | |
      |---|---|
      | 1/1/2014 | +1.5%* |
      | 1/1/2015 | +1.5%* |
      | 1/1/2016 | +1.5%* |
      | 1/1/2017 | +1.5%* |
      | 1/1/2018 | +1.5%* |

   b. Modify 18.3:  A Flight Attendant who advances from one (1) longevity step to the next shall have his/her increase effective each year on their anniversary date.

2. Premium Pay
   a. Replace all references in the CBA to premium pay at 200% with 150%.

      1. Extension –  Section 5.G.6.d
         Delete paragraph 5.G.6.d in its entirety re: ability to decline extensions and receive 200% premium.

      2. Junior Manning - Section 5.G.7.d & 5.G.7.c
         Reduce premium from 200% to 150%, and delete 5.G.7.c re: ability to decline a Junior Manning Assignment.

      3. Reserve Extension into Scheduled Day off – Section 5.M.5.d
         Reduce premium from 200% to 150%.

      4. Working into a Day off – Section 18.G.3
         Reduce premium from 200% to 150%.

3. Holiday Pay
   a. Replace paragraphs 18.K.1 and 18.K.2 with the following:
      The Company shall designate four (4) Flight Attendant Paid Holidays. Flight Attendants working on a designated Flight Attendant Paid Holiday shall be paid 150% for all hours worked on the designated holiday. A Flight Attendant who calls in sick for the last assignment preceding the Holiday or the first assignment following the Holiday shall not receive holiday pay.

4. Section 12.A.6
   a. Pay, no credit for recurrent training.  Recurrent training will be scheduled on a Flight Attendant's day(s) off.

**CONFIDENTIAL**               A - 1

PINNACLE AIRLINES 1113(c) RESTRUCTURING PROPOSAL TO
THE ASSOCIATION OF FLIGHT ATTENDANTS - CWA
AUGUST 16, 2012
TERM SHEET

| | Flight Attendants | | | | | |
|---|---|---|---|---|---|---|
| YOS | DOS | 1/1/2014 | 1/1/2015 | 1/1/2016 | 1/1/2017 | 1/1/2018 |
| 1st 6 Mos | $16.15 | $16.39 | $16.64 | $16.89 | $17.14 | $17.40 |
| 2nd 6 Mos | $17.28 | $17.54 | $17.80 | $18.07 | $18.34 | $18.62 |
| 1 - 2 | $19.29 | $19.58 | $19.88 | $20.18 | $20.48 | $20.79 |
| 2 - 3 | $20.59 | $20.90 | $21.21 | $21.53 | $21.85 | $22.18 |
| 3 - 4 | $21.99 | $22.32 | $22.66 | $23.00 | $23.34 | $23.69 |
| 4 - 5 | $22.97 | $23.32 | $23.67 | $24.02 | $24.38 | $24.75 |
| 5 - 6 | $23.86 | $24.22 | $24.59 | $24.95 | $25.33 | $25.71 |
| 6 - 7 | $24.74 | $25.11 | $25.49 | $25.87 | $26.26 | $26.65 |
| 7 - 8 | $25.46 | $25.84 | $26.23 | $26.62 | $27.02 | $27.43 |
| 8 - 9 | $26.36 | $26.76 | $27.16 | $27.57 | $27.98 | $28.40 |
| 9 - 10 | $27.14 | $27.55 | $27.96 | $28.38 | $28.81 | $29.24 |
| 10 - 11 | $27.90 | $28.32 | $28.74 | $29.18 | $29.61 | $30.06 |
| 11 - 12 | $28.60 | $29.02 | $29.46 | $29.90 | $30.35 | $30.80 |

PINNACLE AIRLINES 1113(c) RESTRUCTURING PROPOSAL TO
THE ASSOCIATION OF FLIGHT ATTENDANTS - CWA
AUGUST 16, 2012
TERM SHEET


## ATTACHMENT B

### "Profit Sharing Plan"*

If consensual agreements are reached, Pinnacle Airlines Corp. will provide a profit sharing plan as outlined below:

1. Payout Threshold
   a. Pre-tax margin excluding non-cash deferred revenue and special items ("Adjusted Margin" and "Adjusted Earnings")
   b. Year end unrestricted cash must exceed $40 million, net of anticipated profit sharing payout. If the last day of the year falls on a weekend, then the year end cash will be measured on the first business day of the following month.

2. Bonus Pool
   a. Ten percent (10%) of Adjusted Earnings up to four percent (4%) in pre-tax margin; fifteen percent (15%) above four percent (4%) in pre-tax margin

3. Payout
   a. Each class of employees will receive a pro rata share of the Bonus Pool based on the ratio of the class's wage and benefits concessions resulting from Pinnacle's bankruptcy to the aggregate amount of such concessions across all employee classes.
   b. The Bonus Pool amount allocated to an employee class for each fiscal year will be allocated to eligible employees within the class on a pro rata basis based on the ratio of the employee's Considered Earnings for the year to the aggregate amount of Considered Earnings for all eligible employees in such class for that year.
   c. Considered Earnings are those earnings currently defined for contribution to the Company's 401(k) for that portion of the fiscal year for which the employee was eligible to participate.

4. Eligibility
   a. All current employees (excluding officers and directors) on implementation date
   b. For those hired after implementation date, 1 year of continuous, active service
   c. Employed at end of year

*Profit Sharing Plan is based on the business plan and cash flows presented to labor as part of the Company's August 16, 2012 proposal. If the business plan and cash flows are materially changed as part of the Chapter 11 process, the Company reserves the right to modify its Profit Sharing proposal.

PINNACLE AIRLINES 1113(c) RESTRUCTURING PROPOSAL TO
THE ASSOCIATION OF FLIGHT ATTENDANTS - CWA
AUGUST 16, 2012
TERM SHEET

## ATTACHMENT "C"

### Merger Language

**MERGER PROTECTIONS.** In the event that Pinnacle Airlines (the "Company") acquires another air carrier, or is acquired by another air carrier, and in either instance the acquirer plans an operational merger between the Company and the other air carrier (the "Carrier Parties") (i.e., the combination of all or substantially all of the assets of the two carriers), the following provisions will apply:

I. Single Carrier Proceedings.

    A. Within ninety (90) days of the closing of the corporate acquisition transaction, the Union shall initiate proceedings before the National Mediation Board ("NMB") to determine the post-merger representative of the craft or class of employees subject to this Agreement.

II. Seniority Integration Procedures

    A. If the employees of both pre-merger carriers in this craft or class are represented by the same organization, there shall be a seniority integration of the two employee groups (the "Labor Parties") in accordance with the Merger Policy of their representative, if any;

    B. Unless otherwise required by law or agreed to by the parties, seniority integration procedures required pursuant to this subsection shall be initiated no later than 90 days after the closing of the corporate acquisition transaction or no later than thirty (30) days after the single carrier determination by the NMB, whichever is earlier, and concluded within ninety (90) days thereafter.

    C. If the employees in one of the two pre-merger carriers in this craft or class are not represented, or if the employees of the two pre-merger carriers in this craft or class are not represented by the same labor organization, or if they are represented by the same labor organization, but that organization has no Merger Policy, the seniority lists will be integrated pursuant to Sections 3 and 13 of the Allegheny-Mohawk Labor Protection Provisions (LPPs) in accordance with the McCaskill Amendment, 49 U.S.C. § 42112 note (2007).

        1. Section 3 of the *Allegheny -Mohawk* LPPs provides: "Insofar as the merger affects the seniority rights of the carriers employees, provisions shall be made for the integration of seniority lists in a fair

12-11343-reg    Doc 701-1    Filed 10/05/12    Entered 10/05/12 18:43:01    Exhibit 1
Pg 8 of 16

PINNACLE AIRLINES 1113(c) RESTRUCTURING PROPOSAL TO
THE ASSOCIATION OF FLIGHT ATTENDANTS - CWA
AUGUST 16, 2012
TERM SHEET

and equitable manner, including, where applicable, agreement through collective bargaining between the carriers and the representatives of the employees affected. In the event of failure to agree, the dispute may be submitted by either party for adjustment in accordance with section 13."

2. Section 13(a) of the *Allegheny -Mohawk* LPPs provides: "In the event that any dispute or controversy (except as to matters arising under section 9) arises with respect to the protections provided herein which cannot be settled by the parties within 20 days after the controversy arises, it may be referred by any party to an arbitrator selected from a panel of seven names furnished by the National Mediation Board for consideration and determination. The parties shall select the arbitrator from such panel by alternatively striking names until only one remains, and he shall serve as arbitrator. Expedited hearings and decisions will be expected, and a decision shall be rendered within 90 days after the controversy arises, unless an extension of time it is mutually agreeable to all parties. The salary and expenses of the arbitrator shall be borne equally by the carrier and (i) the organization or organizations representing employee or employees or (ii) if unrepresented, the employee or employees or group or groups of employees. The decision of the arbitrator shall be final and binding on the parties."

3. Section 13(b) of the *Allegheny -Mohawk* LPPs provides: "The above condition shall not apply if the parties by mutual agreement determine that an alternative method for dispute settlement or an alternative procedure for selection of an arbitrator is appropriate in their particular dispute. No party shall be excused from complying with the above condition by reason of having suggested an alternative method or procedure unless and until that alternative method or procedure shall have been agreed to by all parties."

III. Modification of Procedures Under Section 13 of *Allegheny-Mohawk* LPPs.

A. To facilitate completion of the seniority integration process as efficiently and quickly as possible, the Carrier Parties and the Labor Parties agree to modify and supplement Section 13 of the *Allegheny-Mohawk* LPPs as set forth in this section.

B. The Carrier Parties will respond as quickly as possible to reasonable requests for employment data or other information necessary for the seniority integration representatives to participate in negotiations or arbitration. The provision of

PINNACLE AIRLINES 1113(c) RESTRUCTURING PROPOSAL TO
THE ASSOCIATION OF FLIGHT ATTENDANTS - CWA
AUGUST 16, 2012
TERM SHEET

such data or information may be made subject to execution of confidentiality agreements.

C. The Carrier Parties waive their right to participate in the arbitration process, and will accept any seniority list produced by negotiation or arbitration between the Labor Parties, subject to the conditions set forth in Section IV below.

D. The Labor Parties agree to abide by the following schedule for completion of the seniority integration process and to use best efforts to compel any arbitrator to abide by the schedule.

   1. The Labor Parties will establish merger committees and retain counsel, to the extent that either step is necessary, within sixty (60) days after execution of the Merger Agreement.

   2. The Labor Parties will commence face to face negotiations within ninety (90) days after execution of the Merger Agreement.

   3. If the Labor Parties cannot reach agreement on an Integrated Seniority List through direct negotiations within sixty (60) days, they will select an arbitrator and schedule a hearing to begin no later than thirty (30) days following Closing.

      a. The Labor Parties will condition selection of an arbitrator on the arbitrator's agreement to the conditions set forth below. The arbitrator shall conduct hearings and issue a decision in an expedited manner, and shall issue a decision no later than ninety (90) days following commencement of the hearing.

      b. The arbitrator shall provide the decision and award and final Integrated Seniority List to the Carrier Parties at the same time as it is provided to the Labor Parties.

      c. The final decision and award shall include as an integral part of the decision and award the Carrier Parties' conditions for acceptance as set forth in Section IV.A below.

E. The Labor Parties shall share equally the salary and expenses of the arbitrator and other costs of arbitration.

F. The Integrated Seniority List shall be final and binding on all parties and may be implemented by Merged Carrier upon receipt.

**CONFIDENTIAL**                         C - 3

PINNACLE AIRLINES 1113(c) RESTRUCTURING PROPOSAL TO
THE ASSOCIATION OF FLIGHT ATTENDANTS - CWA
AUGUST 16, 2012
TERM SHEET

IV. Acceptance of Integrated Seniority List.

   A. The Carrier Parties will accept any Integrated Seniority List produced by negotiation or arbitration between the Labor Parties (including any conditions and restrictions set forth in the seniority integration agreement or in the arbitrator's decision and award) if, but only if, the Integrated Seniority List complies with the following requirements:

      1. no "system flush" whereby an active flight attendant may displace any other active flight attendant from the latter's position; and

      2. furloughed flight attendants may not bump/displace active flight attendants; and

      3. no requirement for flight attendants to be compensated for flying not performed; and

      4. does not contain conditions and restrictions that materially increase costs.

V. Implementation of Integrated Seniority List.

   A. The Carrier Parties shall not implement the Integrated Seniority List prior to Operational Integration.

   B. No employee of any Carrier Party may claim an entitlement to seniority rights of any type under the Integrated Seniority List, or to compensation or other benefits in lieu of such seniority rights, prior to Operational Integration.

VI. Administration and Expenses

   A. The Carrier Parties will comply with reasonable requests for the release of employees to participate in the negotiations and arbitration required under this agreement, subject to existing contractual provisions governing reimbursement for union leave, unless the release is not feasible due to operational considerations.

   B. Except as otherwise required in any applicable pre-merger collective bargaining agreement, each party will be responsible for the compensation, travel and other expenses of its representatives, witnesses, and other participants required to complete seniority integration or other Merger duties.

**CONFIDENTIAL**                                   C - 4

PINNACLE AIRLINES 1113(c) RESTRUCTURING PROPOSAL TO
THE ASSOCIATION OF FLIGHT ATTENDANTS - CWA
AUGUST 16, 2012
TERM SHEET

VII. Contract Integration.

    A. The pre-merger collective bargaining agreements (or terms of employment for unrepresented employees) of the two pre-merger employee groups in this craft or class shall be merged into one (1) agreement as the result of negotiations between the post-merger representative of the flight attendants and the acquirer. If a fully merged agreement is not executed within six (6) months from the date an integrated seniority list is presented to the acquirer, the parties shall jointly submit outstanding issues to binding interest arbitration. In such interest arbitration, the arbitrator will be required to produce an agreement with competitive labor terms and costs which do not exceed the industry average for employees in this craft or class among U.S. regional carriers providing regional feed to a mainline carrier with 100 hundred (100) or more aircraft in their active fleet; provided that the arbitrator shall be limited to the subjects of rates of pay, rules, and working conditions and shall have no authority to create restrictions on management rights or on the scope of business or business prerogatives of the Company, unless the Company has agreed to such restrictions.

VIII. Operations Pending Complete Operational Merger.

    A. The acquiring Company in a merger transaction subject to this section shall have the option to integrate operations in whole or in part prior to the final completion of the operational merger, including common schedules, uniforms, livery and similar matters, but shall not co-mingle the employees in this craft or class at any location until the seniority integration procedures provided above have been concluded.

    B. The acquiring Company in a merger transaction subject to this section shall also have the option to maintain and operate the two pre-merger entities as separate airlines pending the integration of seniority lists and negotiation of a consolidated collective bargaining agreement in accordance with this section.

**CONFIDENTIAL**　　　　　　　　　　　C - 5

PINNACLE AIRLINES 1113(c) RESTRUCTURING PROPOSAL TO
THE ASSOCIATION OF FLIGHT ATTENDANTS - CWA
AUGUST 16, 2012
TERM SHEET

IV. Waiver of Merger Provisions.

In the event that the Company determines that the time limits contained in paragraphs I, II and IV of this Section present an impediment to agreement to a transaction which is otherwise in the best interests of the Company, the Company shall have the option to waive the provisions of this section, provided that the Company shall first meet and confer with the Union about the proposed transaction and possible waiver.

PINNACLE AIRLINES 1113(c) RESTRUCTURING PROPOSAL TO
THE ASSOCIATION OF FLIGHT ATTENDANTS - CWA
AUGUST 16, 2012
TERM SHEET

**ATTACHMENT "D"**

Co-Domiciles

1. Flight Attendants may be concurrently domiciled at airports designated as a co-domicile. Each co-domicile will have one airport designated as the Primary base and the other airport(s) will be considered the Secondary base(s).

2. The Company will build published lines of time consisting only of trip sequences which start and end at the same co-domicile for the entire contractual month, including transition trip sequences. For example, a LGA co-domicile line of time will contain only trip sequences that originate and terminate in LGA. A trip sequence may include a surface leg(s) between the co-domiciles. Reserve assignments will also start and end at the same co-domicile.

3. At the Flight Attendant's request the Company will adjust awarded Open Time sequences so that they start and end at the same co-domicile (i.e., JFK or LGA). An Open Time sequence may include a surface leg(s) between the co-domiciles.

4. A Flight Attendant whose trip sequence begins with a ground deadhead between co-domiciles will not be required to sign in at the co-domicile where his/her ground deadhead begins. A Flight Attendant must inform Crew Scheduling whether he will be in position for the ground deadhead or his/her first departure without utilizing the ground deadhead.

5. If a Flight Attendant's ground deadhead at the completion of his/her sequence requires more time than what is originally scheduled he/she will notify crew scheduling of his/her arrival time at the co-domicile where his/her trip sequence originated. A Flight Attendant is not considered to be in "rest" pursuant to the Basic Agreement when deadheading.

6. The Company will provide transportation between co-domiciles, if necessary, due to cancellations or schedule changes which cause a Flight Attendant's trip to terminate at a different co-domicile than where the trip sequence originated. Such time spent in transit will not be considered rest. The Company may modify any surface deadhead between co-domiciles which originally was scheduled within fourteen hours of duty to exceed fourteen hours of duty. At the Flight Attendant's option, he/she will be released at the co-domicile where his/her flying terminated. Company provided ground transportation will not require the Flight Attendant to "front" the money and later submit for reimbursement.

7. A reserve Flight Attendant who drives his/her personal vehicle to work may, upon request, receive parking passes for both airports in a co-domicile.

8. The reserve callout time for the primary airport of a co-domicile is 120 minutes and the callout time for a secondary airport is 180 minutes.

9. Flight Attendants will be paid for all ground deadheads between co-domiciles in accordance with Section 19.C.

PINNACLE AIRLINES 1113(c) RESTRUCTURING PROPOSAL TO
THE ASSOCIATION OF FLIGHT ATTENDANTS - CWA
AUGUST 16, 2012
TERM SHEET

10. The Company recognizes the difficulty of travel in major Metropolitan areas, and will consider such in evaluating late reports or missed assignments.

11. JFK and LGA will be treated as a single domicile for all purposes except as stated herein.

12. The Company has the right to establish co-domiciles which may include two or more airports within the same metropolitan area (e.g. EWR may be added to the LGA-JFK co-domicile.) If the Company intends to establish a new co-domicile, it will meet and confer with the Union at least thirty (30) days before opening such co-domicile to discuss the co-domicile operation.

PINNACLE AIRLINES 1113(c) RESTRUCTURING PROPOSAL TO
THE ASSOCIATION OF FLIGHT ATTENDANTS - CWA
AUGUST 16, 2012
TERM SHEET

**ATTACHMENT "E"**

Benefits and Retirement

1. Section 16.A:  Medical, Dental, and Vision
   a. Increase employee contribution at all levels to 35. "All levels" mean:  employee only, employee + spouse, employee + children, and Family.
   b. Delete paragraph 3, which requires the Company to meet and review the following year's benefit contribution, as redundant to paragraph 5.
   c. Revise paragraph 5 to read as follows:
      The Company and the Association will meet no later than September 15 of each year to address any anticipated changes to the cost of the plans.
   d. Delete paragraphs 16.A.5.a and 16.A.5.b.
      Removes the data requirements and eliminates the refund based on actual expenses.

2. Section 16.C.3
   Delete paragraph as information is now available on www.mypinnaclebenefits.com

3. Section 10.c.8: Benefits Continuation
   Revise Section 10.c.8 to read:
   A Flight Attendant's health benefits shall continue in compliance with applicable state and/or federal law provided appropriate premiums are paid

4. Section 22: Retirement and 401k
   a. No change to contractual language. The following table will be posted to the Company's website as referenced in paragraph 22.C.3

      | Years of Service | Company Match % | Match Salary Reduction Contributions Each Plan Year Up To |
      |---|---|---|
      | 1 but less than 6 | 25% | 6% of eligible earnings |
      | 6 but less than 11 | 50% | 8% of eligible earnings |
      | 11 or more | 50% | 10% of eligible earnings |

   b. New hires will be automatically enrolled in the Plan the first day of the month following 6 months of employment.

**NON-CONTRACTUAL ITEMS**
1. Extended Sick leave will be eliminated pursuant to Company Policy.

2. Employees will be offered a voluntary 100% employee paid short term disability plan.

3. Employee will be required to pay 25% of the long term disability premium. Employee may opt out. LTD plan will contain a 120 day elimination period.

PINNACLE AIRLINES 1113(c) RESTRUCTURING PROPOSAL TO
THE ASSOCIATION OF FLIGHT ATTENDANTS - CWA
AUGUST 16, 2012
TERM SHEET

| Proposed HRA Medical Plan | |
|---|---|
| **Benefit** | **2013 Single HRA Plan Design - Propose July, 2012** |
| **Annual Deductible In Network** | $1,500 Single $3,000 Family |
| **Annual Deductible Out of Network** | $2,000 Single $4,000 Family |
| **Company HRA Contributions** | $500 Single $1,000 Family |
| **Out of Pocket Maximums In Network** | $3,000 Single $6,000 Family Includes Deductible |
| **Out of Pocket Maximums Out of Network** | $5,000 Single $10,000 Family Includes Deductible |
| **Out of Network Co-Insurance** | 50% Coinsurance |
| **Office Visits** | Coinsurance and Deductible |
| **Office Visits - Specialist** | Coinsurance and Deductible |
| **Urgent Care Co-Pay** | Coinsurance and Deductible |
| **Emergency Room Co-Pay** | $250 Co-Pay then 20% After Deductible |
| **High Cost Radiology (CT, MRI, PET)** | $250 Co-Pay then 20% After Deductible |
| **Inpatient Surgery(1)** | $250 Co-Pay then 20% After Deductible |
| **Mental Health Inpatient** | $250 Co-Pay then 20% After Deductible |
| **Gastric By-pass** | Do Not Cover For Anyone |
| **Prescription Deductible** | $500 Deductible |
| **Prescription 30 day supply** | 20% After Deductible |
| **Mail Order Rx 90 day supply** | 20% After Deductible |

NOTE: The plan design above is for 2013 only.  Plan designs for 2014 and beyond may be subject to change by the Company.