**Hearing Date: October 16, 2012 at 9:45 a.m. (ET)**

MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Brett H. Miller
Lorenzo Marinuzzi
Stefan W. Engelhardt

*Counsel for the Official Committee*
*of Unsecured Creditors of Pinnacle Airlines Corp., et al.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | ) Chapter 11 |
| Pinnacle Airlines Corp., *et al.* | ) 12-11343 (REG) |
| Debtors. | ) Jointly Administered |

**STATEMENT OF THE OFFICIAL COMMITTEE OF**
**UNSECURED CREDITORS REGARDING DEBTORS' MOTION TO**
**REJECT COLLECTIVE BARGAINING AGREEMENTS WITH**
**THE AIR LINE PILOTS ASSOCIATION, INTERNATIONAL AND THE**
<u>**ASSOCIATION OF FLIGHT ATTENDANTS-CWA PURSUANT TO 11 U.S.C. § 1113**</u>

The Official Committee of Unsecured Creditors (the "**Committee**") of Pinnacle Airlines Corp. and certain of its direct and indirect subsidiaries in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), by its counsel, Morrison & Foerster LLP, hereby submits this statement (the "**Statement**") regarding the *Debtors' Motion to Reject Collective Bargaining Agreements with the Air Line Pilots Association, International and the Association of Flight Attendants-CWA Pursuant to 11 U.S.C. § 1113* (the "**Motion**").[1] In support of the Statement, the Committee respectfully states as follows:

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

**STATEMENT**

1. By the Motion, the Debtors seek entry of an order authorizing them to (a) reject their collective bargaining agreements with the Air Line Pilots Association, International and the Association of Flight Attendants-CWA and (b) implement the terms of the Debtors' section 1113 proposal. From the first day hearings in these cases, it has been clear that the viability of this airline and the possibility that creditors may obtain any meaningful recovery depend on the Debtors' ability to fix the business as quickly as possible, by obtaining, among other things, significant cost-savings from their labor unions.

2. The operating structure of the Debtors' business (primarily the Debtors' agreements with their sole customer, Delta Airlines) restricts the Debtors' ability to recognize material improvements in revenue during the pendency of the bankruptcy. As a result, the Debtors must minimize expenses in a variety of other areas so that they can emerge from chapter 11 as a viable airline and compete for other business post-confirmation. The Committee is supportive of the Debtors' attempts to rein in costs during these chapter 11 cases to date. While the Committee maintains that the requisite cost-savings should not—and cannot—be borne by labor alone, the Committee also understands that labor costs, which account for approximately 70% of the Debtors' controllable costs, must be significantly adjusted in order for the Debtors to successfully reorganize. The Debtors have undertaken a process to identify other potential cost-savings, including costs associated with their real estate, fleet, and contracts, among other areas, and need to continue their efforts on that front.

3. The stakes are high for the employees who are being asked to make significant sacrifices, and for management, which ultimately bears the responsibility for successfully guiding the airline through a restructuring process that will produce a company with prospects for long-term viability. The Committee is mindful that a delicate balance—having a cost-

effective labor pact that ensures the future viability of the airline, on the one hand, and compensating labor with a market competitive pay and benefits package to ensure the retention and recruitment of the skilled labor necessary to run the airline, on the other hand—must be struck. The Committee encourages both sides to continue to work towards a consensual resolution that will enable the Debtors to take full advantage of the "fresh start" afforded by these chapter 11 cases. The Committee supports any relief the Court may order or other action of the Court that would facilitate such a resolution, as the actions being taken now will set the stage for the airline's prospects upon emergence.

4.      Reorganization of this airline and emergence from chapter 11 with all deliberate speed is the primary goal, and failure would undoubtedly be a disaster for creditors and other constituents. Using the Court's analogy from a recent hearing, the Committee does not want to see "the patient die on the operating table." The Debtors' debtor-in-possession credit agreement (the "**DIP Agreement**") with Delta Airlines has a maturity date of March 31, 2013, and currently contains milestones that include obtaining a ruling on the Motion by December 12, 2012, and confirmation of a plan by February 12, 2013. The Committee is concerned that a default under the DIP Agreement or other events that delay emergence will jeopardize the Debtors' ability to successfully exit from bankruptcy. As such, the Committee is well aware that saving the "patient" in this case will require a prompt and workable resolution of the labor issues, whether consensually or otherwise, so that the parties can turn their attention to the many issues still facing these Debtors.

Dated: October 12, 2012
New York, New York

Respectfully submitted,

/s/ Brett H. Miller
MORRISON & FOERSTER LLP
Brett H. Miller
Lorenzo Marinuzzi
Stefan W. Engelhardt
1290 Avenue of the Americas
New York, NY 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Counsel for the Official Committee of Unsecured Creditors of Pinnacle Airlines Corp., et al.*