UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
                                            :
In re                                       :          Chapter 11
                                            :
PINNACLE AIRLINES CORP., *et al.*,          :          Case No. 12-11343 (REG)
                                            :
                        Debtors.            :          (Jointly Administered)
                                            :
----------------------------------------------------------------x

### REPLY DECLARATION OF DANIEL M. KASPER
### IN SUPPORT OF MOTION TO REJECT COLLECTIVE BARGAINING
### AGREEMENTS WITH THE AIR LINE PILOTS ASSOCIATION, INTERNATIONAL,
### AND THE ASSOCIATION OF FLIGHT ATTENDANTS-CWA, PURSUANT TO 11
### U.S.C. § 1113

I, DANIEL M. KASPER, subject to the penalties provided by law for perjury, do hereby declare the following to be true and correct:

## I.    IDENTIFICATION

1.     I am a Senior Consultant for Compass Lexecon.  My qualifications and assignment in this matter are set forth in my first Declaration filed in this matter on September 13, 2012.[1]

2.     I submit this reply declaration in response to certain points raised by the experts for the Air Line Pilots Association International ("ALPA") and the Association of Flight Attendants-CWA ("AFA") in their Declaration and Expert Report filed on October 5, 2012.[2]

3.     This reply declaration contains my opinions as well as the bases for those opinions. In preparing this analysis, I have been assisted by economists on the staff of Compass Lexecon.  The opinions set forth in this reply declaration are based upon my review and analysis of:  (i) relevant articles, academic publications and publicly available information and data sources routinely relied upon by economists and other airline industry analysts including the Official Airline Guide ("OAG") schedule database, the U.S. Department of Transportation's ("DOT") Form 41 database, airline annual reports and other filings made with the U.S. Securities and Exchange Commission ("SEC"), press releases, as well as airline and financial trade press sources; (ii) conversations with and information provided

---

[1] *See* "Declaration Of Daniel M. Kasper In Support Of Motion To Reject Collective Bargaining Agreements With The Air Line Pilots Association, International, And The Association of Flight Attendants-CWA, Pursuant To 11 U.S.C. § 1113", In re: Pinnacle Airlines Corp., et al., Debtors, Chapter 11 Case No. Case No. 12-11343 (REG), Southern District of New York, September 13, 2012, hereafter "Initial Declaration".

[2] In particular, I refer to "The Declaration of Daniel Akins In Opposition to Pinnacle's Application to Reject AFA-CWA's Collective Bargaining Agreement Pursuant to 11 U.S.C. § 1113(c)", October 5, 2012, hereafter "Akins Declaration" and the "Direct Testimony and Expert Report of Marcia L. Eubanks", In re: Pinnacle Airlines Corp., et al., Debtors, Chapter 11 Case No. Case No. 12-11343 (REG), Southern District of New York, October 5, 2012, hereafter "Eubanks Report".

by Company officials; (iii) declarations, pleadings and other documents that have been filed as part of Pinnacle's restructuring to date; and (iv) my own knowledge and more than 30 years of experience from working with, researching and/or regulating the airline and aerospace industries.[3]    My investigation and consideration of the issues in this matter is ongoing. Accordingly, my opinions are subject to revision based on the work I may complete in the future and further documents, data, testimony, and other materials I may review. If called as a witness, I could and would testify competently to the opinions set forth in this reply declaration. My professional fees for this matter are $725 per hour.

## II.    SUMMARY OF OPINIONS

4.    The declarations/expert reports of the experts for ALPA and AFA contain a number of mischaracterizations, omissions of key industry facts and/or conclusions that are without economic basis or that are unsupported by the data. With regards to my Initial Declaration, the ALPA and/or AFA experts erroneously argue that:

- The analysis contained in my initial declaration corroborating Delta's assertion that the rates it pays Pinnacle for 76-seat regional jet ("RJ") flying are substantially higher than the rates it pays other Delta Connection ("DCI") carriers for equivalent lift is undermined because it did not specifically consider the pilot seniority integration arbitration award (the "Bloch Award"[4]) or unusually high pilot training costs experienced by Pinnacle in 2011.[5]

---

[3] A list of documents and information sources considered is included as Appendix A.

[4] *See* Opinion of Richard I. Bloch, Esq, In the Matter of the Seniority Integration Arbitration Between The Pilots of Pinnacle Airlines And The Pilots of Colgan Air And The Pilots of Mesaba Airlines, June 16, 2011. *See also* Eubanks Report, Paragraph 39.

[5] *See* Eubanks Report, Paragraph 38.

- My analysis of Pinnacle's pilot cost disadvantage vis-à-vis other DCI carriers was incomplete because it did not specifically address 50-seat flying.[6]

- My analysis of Pinnacle's wage-related flight attendant cost disadvantage vis-à-vis Compass and GoJet:  (i) utilized outdated pay rates for GoJet, (ii) was not independent, (iii) overstated Pinnacle' cost disadvantage vis-à-vis Compass by $0.04/hour, and (iv) suffered from double counting.[7]

5.    As I will explain in Section III below, these arguments are either demonstrably incorrect or inconsequential and do not alter any of the opinions expressed in my Initial Declaration.  Likewise, Section III also explains why neither Mr. Akins' Declaration nor Ms. Eubanks' report have provided any persuasive arguments that would cause me to alter my fundamental opinion that Pinnacle needs to dramatically reduce its labor costs if it is to survive in the highly commoditized regional airline industry.[8]

### III.    ANALYSIS OF MR. AKINS' DECLARATION AND MS. EUBANKS' REPORT

(i) **Contrary to Ms. Eubanks, Publicly Available Data Confirm that Pinnacle Has A Substantial Pilot Cost Gap to Other Delta Connection Carriers For 76-Seat Flying**

6.    In my Initial Declaration, I described how U.S. DOT data could be used to corroborate Delta's assertion to Pinnacle that the average rates it pays for 76-seat flying are substantially lower than what Delta currently pays Pinnacle for

---

[6] *See* Eubanks Report, Paragraph 40 and Akins Declaration, page 53.

[7] *See* Akins Declaration, pages 47-49.  Mr. Akins filed corrections to his Declaration on October 11, 2012 withdrawing his second and third criticisms, which I address in greater detail in Paragraphs 20 and 21 below.  *See* Corrections To The Declaration Of Daniel W. Akins In Opposition To Debtors' Motion To Reject Collective Bargaining Agreements With The Association Of Flight Attendant-CWA Pursuant to 11 U.S.C. § 1113, October 11, 2012, ("Eliminate Paragraph 100 F Entirely").

[8] This reply declaration does not address all of the opinions of ALPA and AFA experts that I disagree with or believe to be in error.

3

equivalent lift.   In particular, I estimated that Pinnacle's annual pilot cost disadvantage per 76-seat aircraft vis-à-vis Compass and Shuttle America is approximately $309,000 and $143,000, respectively.[9]

7.      Ms. Eubanks has offered three criticisms of this analysis.  First, she asserts that the 3.1% "seniority adjustment" I applied to Pinnacle's CRJ-900 costs to account for the increase in average seniority of Pinnacle's remaining CRJ-900 pilots after the 16 Atlanta CRJ-900s are removed from the fleet ignores the Bloch Award, thereby overstating the cost differential.[10]   Second, she suggests that Pinnacle's 2011 pilot costs were anomalous because of unusually high training costs resulting from the integration of its pilot groups and the reduction in flying.[11]   Finally, she points out that I failed to provide a comparable analysis for 50-seat flying, even though Pinnacle's 50-seat RJ fleet is significantly larger than its 76-seat RJ fleet.[12]   As described below, none of these criticisms is persuasive or in any way undermines the reliability of my analysis.

8.      Ms. Eubanks argues that because of the terms and conditions contained in the Bloch Award, it is unreasonable to assume that the removal of the 16 CRJ-900s would result in a 3.1% increase in Pinnacle's pilot-related costs (resulting from the remaining pilots being, on average, more senior—and thus at higher pay steps— than the current CRJ-900 pilots).[13]   As described in detail in Appendix C of my Initial Declaration, my analysis made the standard assumption that the CRJ-900 Captains who will be "bumped" as a result of the fleet reduction would be the most junior Captains, and that this would result in the average CRJ-900 Captain's

---

[9] *See* Initial Declaration, Paragraph 82.

[10] *See* Eubanks Report, Paragraph 39.

[11] *See* Eubanks Report, Paragraph 38.

[12] *See* Eubanks Report, Paragraph 40.

[13] *See* Eubanks Report, Paragraph 39.

4

seniority increasing by approximately 2.1 years.[14]  Ms. Eubanks' Report criticizes this assumption on the basis that the Bloch Award allows for certain more junior pilots to hold a CRJ-900 Captain position over a more senior pilot, thus resulting in a smaller increase in the average Captain's seniority than I had estimated in my Initial Declaration.[15]

9.    An analysis of the Bloch Award, however, indicates that the assumptions used in my analysis were reasonable.  In particular, my understanding of the Bloch Award is that it requires that for the five years beginning with the submission of the integrated seniority list, any reduction in the number of CRJ-900 Captains needs to maintain the pre-merger ratio of Mesaba-to-Pinnacle CRJ-900 Captains of 279-to-95.[16]  Put differently, of the 261 CRJ-900 Captains that remain after the reduction, approximately 74.5% (i.e., 279/(279+95)) would need to be pre-merger Mesaba pilots while 25.5% (i.e., 95/(279+95)) would need to be pre-merger Pinnacle pilots.

10.    Based on this ratio, I estimate that the increase in average seniority for CRJ-900 Captains as a result of the removal of the 16 CRJ-900s will be 2.0 years, only slightly below the 2.1 years in my Initial Declaration.  Based on this increase in

---

[14] See Initial Declaration, Exhibit 31.  Exhibit 32 of my Initial Declaration also demonstrated that the average seniority of the CRJ-900 First Officers would increase by 0.1 years, but this has only a marginal impact (i.e., less than one-tenth of one percentage point) on the overall increase in pilot costs resulting from the seniority adjustment (see Initial Declaration Exhibit 33, Line J).

[15] See Eubanks Report, Paragraph 39: "the seniority penalty of 3.1% to pilot costs that Compass Lexecon assigned on account of the return of the Atlanta-based CRJ-900 fleet ignores the effect of the conditions and restrictions in the Bloch Award that protect specific pilot positions on the CRJ-900 fleet for the next several years."

[16] See Bloch Award, Page 20:  "In the event both Mesaba and Pinnacle pilots have less than 279 and 95 CRJ-900 captain positions, respectively, CRJ-900 captain positions shall be awarded on a ratio of 279 Mesaba pilots to 95 Pinnacle pilots until either Mesaba or Pinnacle reaches their minimum.  Remaining vacant positions will be awarded in accordance with system seniority."  Furthermore, as noted in the Reply Declaration of Patrick Ryan at Paragraph 13, there remains some ambiguity as to precisely how the Bloch Award is meant to be interpreted, and ALPA has not yet offered the Company their interpretation of how it should be applied.

5

average seniority for CRJ-900 Captains, I estimate that Pinnacle's CRJ-900 costs per block hour will increase by 2.9% (rather than the 3.1% I had originally estimated),[17] and in turn, that its annual pilot cost gap per 76-seat RJ vis-à-vis Compass would be approximately $308,000 (rather than the approximately $309,000 figure estimated in my Initial Declaration).[18]  Simply, put, Ms. Eubanks' assertion—that failing to consider the Bloch Award undermines my analysis and conclusions regarding Pinnacle's 76-seat pilot cost gap—is clearly wrong.[19]

11.   Ms. Eubanks' second criticism of my analysis of the pilot cost gap is that it is based on data from 2011, when Pinnacle's pilot productivity was "negatively affected by the extraordinary training demands related to the integration of the three pilot groups and the overall reduction in flying."[20]  While it is true that Pinnacle's pilot training costs increased in 2011, they are not the underlying cause of Pinnacle's overall pilot cost disadvantage.

12.   One way to test Ms. Eubanks' assertion that the use of 2011 data somehow skews my results is to replicate my analysis of the overall pilot cost gap using the first two quarters of the Form 41 data from 2012.  I have conducted this analysis and it shows that Pinnacle's annual 76-seat pilot cost gap vis-à-vis Compass *grows from $308,000 to $381,000.* Similarly, Pinnacle's annual 76-seat pilot cost gap vis-à-vis

---

[17] *See* Appendix B.  Ms. Eubanks claims to have estimated the CRJ-900 seniority penalty at 2.1%, but fails to provide any details as to how she arrived at that number other than stating that she "obtained a more accurate list of the Captains from the Pinnacle seniority list that would maintain positions on this fleet under the Bloch Award, and revised the Compass Lexecon seniority assumptions accordingly."

[18] Likewise, based on a seniority adjustment of 2.9% rather than 3.1%, Pinnacle's pilot cost disadvantage versus the other DCI carriers (Shuttle America, SkyWest and ExpressJet/ASA) would fall from approximately $143,000 to approximately $142,000.

[19] Moreover, even based on Ms. Eubanks' own estimate of the seniority penalty of 2.1%, the cost gap vis-à-vis Compass is only reduced from $309,000 to $300,000 and thus does not impact my underlying conclusion.

[20] *See* Eubanks Report, Paragraph 38.

6

Shuttle America, SkyWest and ExpressJet/ASA grows from $142,000 to $219,000.[21]

13. Another way to test Ms. Eubanks' assertion that high training costs in 2011 were the principal cause of Pinnacle's high overall CRJ-900 pilot costs is to assume a level of training costs similar to that of SkyWest. For example, in 2011, Pinnacle's CRJ-900 pilot training costs as a percentage of its total CRJ-900 pilot costs was 9.3%.[22] By comparison, SkyWest's CRJ-900 pilot training costs as percentage of its total CRJ-900 pilot costs in 2011 was 6.9%. Had Pinnacle's CRJ-900 pilot training costs as a percentage of its total CRJ-900 pilot costs been the same as SkyWest's, I estimate that Pinnacle's annual pilot cost gap per 76-seat RJ would have been approximately $281,000 rather than the $308,000.[23]

14. Ms. Eubanks' assertion that Pinnacle's "overall reduction in flying" was a reason why Pinnacle's pilot productivity in 2011 was negatively affected is likewise puzzling in light of the fact that Pinnacle's "overall" scheduled block hours fell by less than one percent in 2011 vs. 2010, far less than the Company's block hours are scheduled to decline in 2012 (i.e., more than 20%).[24]

15. Finally, Ms. Eubanks' (and Mr. Akins') criticism that my analysis of Pinnacle's 76-seat cost disadvantage is somehow undermined because I did not provide a

---

[21] Moreover, as noted in the Reply Declaration of Patrick Ryan, Pinnacle expects to incur relatively high volumes of pilot training on an ongoing basis. *See* Reply Declaration of Patrick Ryan, Paragraph 13.

[22] Pinnacle/Mesaba's CRJ-900 training costs as a percentage of their total CRJ-900 pilot costs in 2011 (9.3%) were in fact slightly lower than for the period 2008-2011 (9.5%).

[23] For the purposes of this sensitivity analysis, I also incorporated the impact of the Bloch Award as described above. Likewise, assuming a training cost percentage of 6.9% would reduce Pinnacle's annual pilot cost gap per 76-seat aircraft vis-à-vis Shuttle America, SkyWest and ExpressJet/ASA from $142,000 to $115,000 in 2011.

[24] *Source*: OAG. Pinnacle includes Mesaba and Colgan for all years.

comparable analysis for 50-seat RJs is flawed for several reasons.[25]  Importantly, the purpose of my Form 41 pilot cost analysis is to corroborate Delta's claim that the *rates* it pays for 76-seat flying are substantially lower than what it currently pays Pinnacle for CRJ-900 flying using public data.  Because the rates Delta pays are confidential by their very nature, I rely on the Form 41 pilot cost data as a proxy for the component of the "rate gap" that is reflected by differences in pilot costs, and for 76-seat flying, this analysis clearly demonstrates that Pinnacle's pilot costs are substantially higher than those of the other DCI carriers.

16.    Unfortunately, the same method is not a reliable basis for assessing Pinnacle's 50-seat cost disadvantage due to the chaotic status of the current market for 50-seat flying.  Indeed, as discussed at length in my Initial Declaration, there is currently a glut of 50-seat RJs in the U.S. market as a result of the large network carriers eliminating over one million annual 50-seat RJ block hours since 2005.[26]  In light of such a supply and demand imbalance, it should come as no surprise that several regional carriers are incurring substantial losses on their 50-seat flying, or put differently, *are receiving rates that are substantially below their costs*.  For example, Republic's CEO (Bryan Bedford) has recently stated that its 50-seat Chautauqua division is suffering from substantial losses:   *"It is no secret to those of you who follow us closely that every one of our Chautauqua CPA [capacity purchase agreement] contracts is actually loss making"*[27] and that the carrier needs to attain $40-$60 million in annual cost savings and productivity

---

[25] *See* Eubanks Report, Paragraph 40.  Mr. Akins has also challenged the opinions set forth in my Initial Declaration by stating that it contained "No Diligence on 50 Seat Aircraft."  *See* Akins Declaration, page 53.

[26] *See*, for example, Initial Declaration, Paragraph 51 and Exhibit 17.  Based on an average utilization of 9.5 hours per day, this equates to nearly 300 50-seat RJs.

[27] *See* "Republic works to restructure loss-making 50-seat operations at its subsidiary Chautauqua", CAPA Center for Aviation, May 3, 2012.

enhancements in order for the unit to return to profitability.[28]  At the end of 2011, Chautauqua's fleet consisted of 73 aircraft with 37-50 seats.[29]  Based on the midpoint of Republic's $40-60 million cost savings target for its Chautauqua operations, it would have to achieve annual cost savings of *$684,000 per aircraft* in order to return Chautauqua to profitability.

17.  Furthermore, as Republic's Mr. Bedford has also stated: "This isn't a Chautauqua-alone problem…This is a 50-seater economic problem that permeates the 1,200 50-seaters employed in the U.S. right now.  It's a market that is trying to find where the right support levels are for the number of operators, the amount of lift that's in place."[30]

### (ii) None of Mr. Akins' Criticisms Alter My Fundamental Conclusion That Pinnacle's Flight Attendant Costs Are Substantially Higher Than Those of Compass and GoJet

18.  In my Initial Declaration, I noted that limitations in the Form 41 data prevented me from providing an estimate of Pinnacle's flight attendant cost gap vs. other DCI carriers analogous to the one I had conducted for pilots.[31]  In light of the lack of Form 41 flight attendant cost data for regional carriers, I instead estimated Pinnacle's annual flight attendant wage and wage-related cost gap vis-à-vis two relatively small but successful "new entrant" regional carriers (Compass and GoJet).[32]  In particular, I estimated that Pinnacle's annual flight attendant wage-

---

[28] *See* "Republic Overhauling Chautauqua Operation to Produce Profits", *Aviation Daily*, April 27, 2012.

[29] In 2011, Delta was also Chautauqua's largest 50-seat CPA customer.  *See* Republic Holdings 2011 10-K.

[30] *See* "Republic Overhauling Chautauqua Operation to Produce Profits", *Aviation Daily*, April 27, 2012.

[31] *See* Initial Declaration, Paragraph 83.

[32] As seen in Appendix D of my Initial Declaration, Compass began operations in 2007 and GoJet began operations 2005.

related cost gap per "large RJ" vis-à-vis Compass and GoJet is approximately $36,000 and $34,000, respectively.[33]

19. Mr. Akins has asserted that my analysis is "fraught with errors, duplication and omissions which render it nearly useless."[34]  Mr. Akins' assertion is based on four criticisms, none of which fundamentally alters my conclusions and two of which are simply incorrect.  First, Mr. Akins correctly observes that the pay scale for GoJet flight attendants that Seabury used (and which I relied on) was outdated.  I have updated my analysis of Pinnacle's wage and wage-related flight attendant cost gap versus GoJet using the updated pay rates and it shows that Pinnacle's annual cost disadvantage (per large RJ) is approximately $29,000 rather than the $34,000 I estimated in my Initial Declaration.[35]

20. Second, Mr. Akins argues that my analysis of the flight attendant wage and wage-related cost gap was not independent, that "the real and only basis for Mr. Kasper's analysis of Flight Attendant costs is the application of the pay data provided to them by Seabury" and that I had "no other source for its average seniority adjusted wage for Pinnacle and Compass, other than the ones generated from the Seabury analysis, which he lists as a source."[36]  These statements are simply false.  While it is true that Seabury provided me with flight attendant wage scales, the methodology used to estimate the wage-related cost gap was independent and—

---

[33] See Initial Declaration, Paragraph 83. "Large RJs" are those configured with between 51 and 100 seats (e.g., CRJ-700, CRJ-900, E-170, E-175), thus requiring two flight attendants.

[34] See Akins Declaration, page 45.

[35] Based on the current rates, I estimate that GoJet's seniority-weighted flight attendant wage rate is $20.01 rather than the $19.46 I originally estimated.  See Appendix C.  It is also worth pointing out that although Mr. Akins notes (see Akins Declaration, Paragraph 62) that the Company "used obsolete GoJet Flight Attendant hourly pay rates which are as much as 14.2% below those in GoJet pay rates since January 2012", the current seniority weighted difference is only 2.8%.  This is because the largest (i.e., 14.2%) increase in the GoJet hourly rates occurred for flight attendants with 11 or more years of service.  However, I estimate that over 85% of GoJet's current flight attendants have five or fewer years of service.  See Appendix C.

[36] See Akins Declaration, page 49.

contrary to the assertions of Mr. Akins—based on my analysis of U.S. DOT Form 41 data.[37]  For example, in order to estimate GoJet and Compass's average flight attendant seniority, I relied on Form 41 fleet data to estimate the number of aircraft at each airline (and hence the number of required flight attendants) at each point in time (i.e., calendar quarter) from the date of their initial launches through the present.[38]  Likewise, I relied on Form 41 data to estimate the likely number of annual aircraft block hours per day (9.5) used to generate the aggregate annual cost gaps.[39]

21.    Indeed, the independence of my analysis is reflected by the fact that my estimate of Compass's seniority weighted flight attendant hourly rate differs from that of Seabury's, which ironically was a third criticism by Mr. Akins.[40]  Although Mr. Akins points to this difference as an "error" that "artificially increases the gap"[41] in my analysis, it should come as no surprise that two independent estimates reach slightly different results.[42]

22.    Fourth, Mr. Akins argues that my estimate of Pinnacle's flight attendant wage-related cost gap amounts to "double counting" because I made no attempt to adjust

---

[37] *See* Akins Declaration, page 49:  "However, there does not appear to be any application of US DOT Form 41 data or source numbers derived from US DOT Form 41 or that Mr. Kasper claims as part of the basis of his Flight Attendant diligence."

[38] *See* Initial Declaration, Exhibits 34 and 35.

[39] Moreover, as noted in Footnote 138 of my Initial Declaration, my assumption of a 1.25-to-1.0 paid-to-block hour ratio was based on (among other things) Exhibit 28 of my Initial Declaration which in turn relied on Form 41 data.

[40] *See* Akins Declaration, page 49:  "Even then the average pay figure Mr. Kasper uses for Compass Flight Attendants seems to be in error. Seabury diligence on average seniority weighted hourly pay at Compass for Flight Attendants produced an hourly pay rate of $19.29, whereas Mr. Kasper's analysis uses $19.25."

[41] *See* Akins Declaration, page 49.

[42] Moreover, the difference of four cents per hour between my estimate and Seabury's would amount to only $381 per aircraft annually (out of a flight attendant cost gap of approximately $36,000).

for work-rule and benefit concessions associated with the May 8th term sheet.[43] However, this criticism could only have merit had I conducted the same "cost per block hour" analysis for flight attendants as I conducted for pilots.[44] But as I clearly stated in my Initial Declaration, a lack of Form 41 data for flight attendants prevented me from performing such an analysis.[45] Thus, because my analysis looked only at the wage and wage-related component and was based on the proposed wages in the May 8th term sheet, suggesting that it amounts to double counting is simply false.

23.  Finally, Mr. Akins' attempts to cast doubt on the overall magnitude of the targeted labor cost savings by asserting that they are "implausible" based on the fact that the total requested amount of $76.5 million annually (covering a fleet of 181 aircraft) amounts to $420,000 per aircraft per year.[46] However, based on an average utilization of 9.0 hours per aircraft each day, this amounts to approximately $127.85 per block hour, which is hardly "implausible." Indeed, Exhibit B of Ms. Eubanks' report shows that Pinnacle/Mesaba's 2011 pilot costs per block hour (for all aircraft types) was $297. But approximately 25% of Pinnacle/Mesaba's block hours in Ms. Eubanks' Exhibit B are for turboprops, which have significantly lower pilot costs per block hour.[47] Adjusting Pinnacle/Mesaba's pilot costs per block hour to reflect only its RJs (CRJ-200s and

---

[43] *See* Akins Declaration, page 47.

[44] Because a cost per block hour analysis incorporates all costs (both wage and wage-related in addition to benefits) as well as productivity, failing to deduct the full value of the May 8 term sheet (as I did for pilots) could constitute double counting.

[45] *See* Initial Declaration, Paragraph 83.

[46] *See* Akins Declaration, pages 50-51: "Pinnacle's $33 million additional concession ask takes the total labor concession requested add up to $76.5 million annually. Based on a fleet of 181 aircraft, Pinnacles labor costs were not $280,000 or $160,000 above market as Delta and Pinnacle claim, but an astounding $420,000 per aircraft per year above the level at which Pinnacle would be viable. This means that the current compensation and work rules of Pinnacle employees are somehow found to be above market rates by $420,000. This is difficult, if not impossible, to believe."

[47] *Source:* U.S. DOT Form 41.

12

CRJ-900s) yields a cost of $312/hour. Furthermore, adding in Ms. Eubanks' estimated seniority penalty of 2.1% implies that in steady-state, Pinnacle's pilot costs per block hour would be $319 per hour, *or nearly $119/hour more than the average of Compass and GoJet shown on her own Exhibit*.[48] Moreover, this comparison still understates Pinnacle's cost disadvantage vis-à-vis those two carriers because their fleets are comprised only of "70-seat" RJs (i.e., CRJ-700s and E-170/175s) whereas Pinnacle's RJ fleet consists of both 76- and 50-seat RJs, with substantially lower pilot pay scales for the latter.

24.    In addition to the points raised by AFA's expert Mr. Akins, AFA has asserted that "any seniority-based comparison to a new airline is inevitably a temporary and transitory comparison because the relative seniority of GoJet and Compass flight attendants will inevitably increase to a level comparable to Pinnacle as the GoJet and Compass work forces age and mature. There is no estimation of what the relative seniority of the GoJet and Compass flight attendants will be in 2018 when the Block Hour rates are subject to being reset but it is apparent from simple logic that it will be substantially higher than it is today, leading to equal flight attendant labor costs without the brutal concessions being demanded by Pinnacle."[49] This theory of "convergence", however, suffers from a key flaw. In particular, because of their lower cost structures, it is reasonable to assume that Compass and GoJet will grow between now and 2018, which in turn will enable them to maintain the bulk of their flight attendant seniority advantage vis-à-vis Pinnacle (which absent substantial labor cost savings is highly unlikely to grow). For example, even if Compass and GoJet were to grow their fleets between now and 2018 by only 50% (i.e., approximately half the rate they grew between 2008 and 2012), their flight

---

[48] Flight attendant wage and wage-related cost differences would add another $8 to $10 per hour based on the analysis contained in Appendix C.

[49] *See* "Memorandum Of Association Of Flight Attendants-CWA In Opposition To Debtors' Motion To Reject Collective Bargaining Agreements With The Airline Pilots Association International And The Association Of Flight Attendants-CWA Pursuant To U.S.C. § 1113", October 4, 2012, page 40.

attendant seniority gaps with Pinnacle would remain close to what they are today (i.e., 2.7 in 2018 vs. 3.0 years today for Compass and 2.7 years in 2018 vs. 3.3 years today for GoJet).[50]


### (iii) Mr. Akins and Ms. Eubanks Ignore The Turmoil That Is Currently Engulfing the Regional Airline Industry And Have Failed To Offer Any Evidence To Refute My Opinion That Pinnacle Must Reduce Its Costs In Order To Compete Successfully For Future Flying Opportunities

25. It is important to emphasize that neither Mr. Akins' Declaration nor Ms. Eubanks' Report provides any credible arguments to rebut a primary conclusion of my Initial Declaration, that "[g]iven the highly commoditized nature of regional lift, there is little reason to believe that Delta—or any other large network carrier for that matter—would elect to pay Pinnacle a premium over a host of other growing, lower cost regional carriers such as Compass, GoJet and Shuttle America for providing *the same* lift services."[51]  Indeed, Mr. Akins' Declaration largely ignores the fact that Pinnacle faces a tremendous cost problem by asserting that Pinnacle's troubles were "largely, but not entirely of their own making" and "primarily attributable to a confluence of one-time events that have largely been remedied."[52]

26. Not only does Mr. Akins appear to ignore Pinnacle's competitive and cost problem, he also appears to be unaware of (or has chosen to ignore) the widespread view held by virtually all airline industry followers that the U.S. regional airline

---

[50] *Source:*  6.44 120816 Buildup of PNCL cost disadvantage (for data room).xlsx, Exhibit 1 below and Initial Declaration, Appendix D.  These estimates assume an annual attrition rate for Compass and GoJet flight attendants of 20% and that new aircraft are distributed uniformly between now and 2018.  Moreover, even if Compass and GoJet don't grow at all over the next six years, both carriers would still enjoy a seniority advantage over Pinnacle in 2018 (i.e., 2.0 years for Compass and for 2.1 years for GoJet).

[51] *See* Initial Declaration, Paragraph 88.

[52] *See* Akins Declaration, page 4.

industry is in turmoil.[53]  Mr. Akins' Declaration even goes as far as asserting that "[a]fter enduring the extreme headwinds of the post 9/11 era it would appear curious that, at a time of relative prosperity in the larger airline industry, Pinnacle Airlines would experience its first loss in a decade in 2011."[54]  Contrary to Mr. Akins, the economic conditions for regional airlines are often different from those faced by airlines that operate larger aircraft.[55]  In light of the fact that three regional carriers—Pinnacle, American Eagle and Comair (accounting for nearly one-third of all regional carrier capacity in 2011)[56] —have either filed for Chapter 11 or are in the process of being liquidated, it is obvious that this is definitely *not* a time of relative prosperity for regional airlines, and an attempt to suggest by implication that this is a time of "relative prosperity" for the regional industry borders on the bizarre.

27.    Similarly, Mr. Akins has also attempted to minimize the competitive threat posed by lower cost, new entrant regional carriers such as GoJet and Compass by suggesting that "the Company chose to only compare itself against GoJet and Compass in the wage-related assessments of the 2nd ask, and no other DCI

---

[53] *See*, for example, Initial Declaration, footnotes 21, 22 and 27, citing "Boeing Sees Regional Jet Market Declining In North America," *Dow Jones Business News,* September 2, 2010, "Reign Over," *Airline Business*, March 26, 2010, "Regional Airlines Get Wings Clipped by Big Partners — Shakeout Is Likely as Commuter Lines Contend With Lower Fees and Fewer Routes Amid Overall Industry Downturn," *The Wall Street Journal,* December 30, 2009, "Collapse of The U.S. Regional Airline Industry is a Real Concern", Aviation Week Blog, February 14, 2012. http://www.aviationweek.com/Blogs.aspx?plckBlogId=Blog:7a78f54e-b3dd-4fa6-ae6e-dff2ffd7bdbb&plckController=Blog&plckBlogPage=BlogViewPost&newspaperUserId=7a78f54e-b3dd-4fa6-ae6e-dff2ffd7bdbb&plckPostId=Blog:7a78f54e-b3dd-4fa6-ae6e-dff2ffd7bdbbPost:e472752e-b8d0-4dd5-86e8-2ab90e9fbeed&plckScript=blogScript&plckElementId=blogDest, and "When the Music Stops," *Flight International*, May 3, 2011.

[54] *See* Akins Declaration, Paragraph 17.

[55] Thus, regional airlines enjoyed an extended period of profitability following the 9/11 attacks while at the same time larger airlines suffered record losses and most were reorganized under Chapter 11.  *See* Initial Declaration, Exhibit 6.

[56] In 2011, American Eagle/Executive Airlines, Comair and Pinnacle accounted for 30.5% of U.S. regional carrier capacity.  *Source*: OAG.

15

comparators, due to their low wage scale alone."[57]   While I agree with Mr. Akins that Compass and GoJet have lower wage scales than Pinnacle, much of their overall labor cost advantage is derived from their status as "new entrants" which gives them a substantial advantage in terms of lower average seniority compared to more established regional carriers such as Pinnacle.[58]   And while it is true that Compass and GoJet are *currently* relatively small carriers, they are—far and away—the fastest growing U.S. regional carriers.   Thus, as demonstrated by Exhibit 1, Compass and GoJet have increased their available seat miles ("ASMs") by 91% and 109%, respectively, since 2008.   Similarly, Republic subsidiary Shuttle America has grown by 30%.   In contrast, over the same period, SkyWest's ASMs grew by only 8%.

**EXHIBIT 1: PERCENTAGE CHANGE IN ASMS, 2008 VS. 2012**



Source: OAG 2008; OAG 2012.
Note: SkyWest includes SkyWest, ASA and Express Jet.

---

[57] *See* Akins Declaration, Paragraph 107.

[58] *See*, for example, Initial Declaration, Exhibit 26 and Appendix D.

28.    Similarly, the data clearly bear out the basic fact that notwithstanding their smaller absolute size, Compass and GoJet have gained a substantial share of Delta Connection flying (Pinnacle's only current customer) at the expense of higher cost regional carriers, including SkyWest.    For example, between 2007 and 2012, Compass and GoJet's combined share of Delta Connection ASMs grew from less than 1% to nearly 15%.  Over the same period, SkyWest's share *fell* from 45% to 40% and Comair's share fell from 19.5% to 5.7%.[59]  And as I explained in my Initial Declaration, Comair has been shut down by Delta due to its uncompetitively high cost structure which was driven in large part by its high average seniority.[60]  Notably, nowhere in his entire 60-page report (including his six-page "trail of events that have created the current state of affairs"[61]) does Mr. Akins even acknowledge this critical fact.

---

[59] As discussed throughout my Initial Declaration, Comair's high cost structure—due in large part to its high average seniority—resulted in Delta shutting down Comair.

[60] *See*, for example, Initial Declaration Paragraphs 55 and 56.

[61] *See* Akins Declaration, Paragraph 85.

**EXHIBIT 2: CHANGE IN DELTA CONNECTION ASMS, 2007 VS. 2012**



Source: OAG 2007: OAG 2012.
Note: SkyWest includes SkyWest, ASA and Express Jet.

29.     Mr. Akins appears to take solace in Pinnacle's prospects for winning new flying opportunities from Delta notwithstanding its high cost structure by pointing to the fact that the CRJ-900s being removed from Pinnacle and Comair's fleets are being transitioned to SkyWest, and not Compass or GoJet.[62]  But this misses the point entirely.  While Pinnacle may currently share a *cost structure* that is more similar to SkyWest's than that of GoJet or Compass, SkyWest has numerous advantages because of its substantially larger scale and financial resources that are simply unavailable to Pinnacle, a point I discussed in my Initial Declaration.[63]  Simply put, in light of the highly commoditized nature of the market for providing regional lift to Delta (as well as the other large network carriers) and the fact that Pinnacle (unlike SkyWest) has little by way of financial resources or scale

---

[62] *See* Akins Declaration, page 47 ("Yet it is older, higher cost, SkyWest that will be taking over the operation of these 29 CRJ-900 aircraft") and page 59 ("The fact that SkyWest is receiving the 16 Pinnacle and 13 Comair CRJ-900s and not GoJet and Compass, undermines their theory that low cost carriers alone will get access of the 76 seat aircraft fleet").

[63] *See* Initial Declaration, Footnote 126.

18

advantages to differentiate its services from those of Compass, GoJet and Shuttle America, it would be a grave mistake for Pinnacle to assume—as Mr. Akins' apparently does—that Delta would choose to allocate future flying opportunities to Pinnacle over carriers that can provide comparable lift at far lower cost.

30.    Likewise, Mr. Akins has criticized Pinnacle's assertion that the new contract Delta reached with its mainline pilots was a "game changer",[64] despite the fact that the contract led to Delta's announcement that it would reduce the number of 50-seat RJs in its Delta Connection fleet from 325 to 125 or fewer.  The new mainline pilot contract created a pathway by which Delta would reduce the number of 50-seat RJs by nearly two-thirds in return for a relaxation in its mainline pilots' "scope clause" that allows Delta to operate greater numbers of large RJs.[65]  In addition, the contract made it possible for Delta to purchase AirTran's 717 narrowbody fleet which are to be flown by Delta's mainline pilots.[66] Overall, the contract has been recognized by others in the industry as a watershed event for both Pinnacle and Comair.[67]

31.    Simply put, it would be a short-sighted and grave mistake for Pinnacle to assume—as Mr. Akins apparently has—that just because its CPAs covering existing flying for Delta are in effect through 2018, that Pinnacle need not be concerned with achieving a labor cost structure that will enable it to win new flying opportunities with Delta (or another large network carrier) in direct

---

[64] *See* Akins Declaration, Paragraph 82.

[65] *See* Akins Declaration, Paragraph 90.

[66] *See* Akins Declaration, Paragraph 91.

[67] For example, following Delta's announcement, another industry observer noted that "The Great Regional Feeding Frenzy of 2012 can now begin. I expect to see some carcasses….  If things don't change dramatically, I wouldn't be surprise [*sic*] to see Pinnacle disappear (along with a lot of flights in Memphis). At the very least, it's going to be a lot smaller…. To me there seems to be a very clear line. Comair and Pinnacle will be lucky to still exist after the dust settles while the rest all can gain something."  *Source*: http://crankyflier.com/2012/07/03/deltas-new-pilot-contract-kicks-off-the-great-regional-feeding-frenzy-of-2012/

19

competition with lower cost providers such as Compass, GoJet or Shuttle America. Importantly, Pinnacle's CPAs with Delta *do not* include any minimum usage requirements, which means that Delta could substantially reduce the amount of Pinnacle's CRJ-200 flying (thereby dramatically reducing Pinnacle's revenues) without violating their current contract.

32.   Finally, Ms. Eubanks implies that a 4.6% operating margin would be sufficient for Pinnacle because it is "above the present industry average and… would exceed the 2011 average (as calculated by Kasper) by 15%."[68]   However, as noted in my Initial Declaration, 2011 was the worst year for regional carriers in almost a decade resulting in the bankruptcy or liquidation of several regional carriers.  To determine the appropriate benchmark for profitability, it is important to take a long-term view of the industry and not rely on a single year at the bottom of a cycle.  As shown in Exhibit 18 of my Initial Declaration, the operating margin of regional carriers over the past 10 years has averaged 6.9%.

33.   Furthermore, as one might expect, successful regional carriers have earned higher profits than the industry average.   In Exhibit 30 of my Initial Declaration, I compared Pinnacle's pre-tax adjusted margins to three successful regional carriers: Republic, SkyWest and Trans States Holdings (the parent Company of GoJet and Compass).  From 2007 to 2011, these three companies have had an average pre-tax adjusted margin of 10.6%, well above the present industry average.   Although these carriers bear more aircraft ownership risk than Pinnacle does and likely earn higher margins because of it, all three earned lower margins in 2011 than in prior years.

---

[68] *See* Eubanks Report, page 9.

34.    Lastly, the inference by both Mr. Akins and Ms. Eubanks that the profit margins under the August 18 asks "are forecast to double"[69] is largely illusory, since these projections assume the same steady state fleet as before the August 18 ask, which is not realistic.  If Pinnacle is successful in lowering its costs to the targeted levels, I anticipate that they would be in a position to win additional flying from Delta (and possibly other large network carriers), but at lower margins than their current contract with Delta, thus driving down Pinnacle's average margins.  Similarly, if Pinnacle does not reach an agreement with Delta to reduce 50-seat flying in exchange for additional 76-seat flying, I expect Delta to exercise its right to unilaterally reduce the utilization of Pinnacle's CRJ-200 fleet, which in turn would reduce Pinnacle's revenues and increase its unit operating costs, thereby reducing Pinnacle's margins.

## IV.    CONCLUSIONS

35.    In conclusion, none of the opinions expressed in the declarations of Mr. Akins and Ms. Eubanks on behalf of AFA and ALPA, respectively, alter the opinions contained in my Initial Declaration.  Furthermore, their declarations contain misstatements of fact and claims regarding the regional airline industry that are unsupported by the data and suffer from obvious flaws in economic logic.

---

[69] *See* Akins Declaration, Paragraph 78.  *See also* Eubanks Report, Paragraphs 25 and 30.

21

Pursuant to 28 U.S.C. § 1746(2), I declare under penalty of perjury that the foregoing is true and correct.

Executed this 12th day of October, 2012, at Boston, Massachusetts

_____
Daniel M. Kasper
October 12, 2012

**APPENDIX A:  LIST OF DOCUMENTS AND INFORMATION SOURCES
CONSIDERED**

**PUBLICLY AVAILABLE DATA AND DOCUMENTS**

1.  U.S. DOT Form 41 Data.

2.  OAG Data.

**PRESS RELEASES and NEWS ARTICLES**

3.  "Boeing Sees Regional Jet Market Declining In North America," *Dow Jones Business News*, September 2, 2010.

4.  "Regional Airlines Get Wings Clipped by Big Partners ─ Shakeout Is Likely as Commuter Lines Contend With Lower Fees and Fewer Routes Amid Overall Industry Downturn," *The Wall Street Journal*, December 30, 2009.

5.  "Reign Over," *Airline Business*, March 26, 2010.

6.  "Republic Works to Restructure Loss-making 50-seat Operations at its Subsidiary Chautauqua," CAPA Center for Aviation, May 3, 2012.

7.  "Republic Overhauling Chautauqua Operation to Produce Profits," Aviation Daily, April 27, 2012.

8.  "When the Music Stops," *Flight International*, May 3, 2011.

9.  "Collapse of the U.S. Regional Airline Industry is a Real Concern," *Aviation Week* Blog, February 14, 2012. http://www.aviationweek.com/Blogs.aspx?plckBlogId=blog:7a78f54e-b3dd-4fa6-ae6e-dff2ffd7bdbb&plckPostId=Blog:7a78f54e-b3dd-4fa6-ae6e-dff2ffd7bdbbPost:e472752e-b8d0-4dd5-86e8-2ab90e9fbeed.

10.  "Delta's New Pilots Contract Kicks Off the Great Regional Feeding Frenzy of 2012." http://crankyflier.com/2012/07/03/deltas-new-pilot-contract-kicks-off-the-great-regional-feeding-frenzy-of-2012/.

i

**SEC FILINGS**

11. Republic Holdings, Form 10-K, year ending 2011.

**PINNACLE DOCUMENTS AND DATA**

12. 2.5 120518 - Pinnacle - Labor cost savings summary.pdf

13. 6.28 RJ900 Data.CONFIDENTIAL.xlsx

14. 6.44 120816 Buildup of PNCL cost disadvantage (for data room).xlsx

15. 6.46 120817 Data & Assumptions for ALPA.CONFIDENTIAL.xlsx

16. 7.5 120525 Pinnacle FA Model for USW_final_data assumptions, work rules.Confidential.xlsx **(Confidential).**

**CASE PLEADINGS AND DECLARATIONS**

17. Declaration of Daniel M. Kasper, September 13, 2012.

18. Declaration of Daniel Akins, October 5, 2012.

19. Corrections To The Declaration Of Daniel W. Akins In Opposition To Debtors' Motion To Reject Collective Bargaining Agreements With The Association Of Flight Attendant-CWA Pursuant to 11 U.S.C. § 1113, October 11, 2012.

20. Direct Testimony and Expert Report of Maria L. Eubanks, October 5, 2012.

21. Memorandum Of Association Of Flight Attendants-CWA In Opposition To Debtors' Motion To Reject Collective Bargaining Agreements With The Airline Pilots Association International And The Association Of Flight Attendants-CWA Pursuant To U.S.C. § 1113, October 4, 2012.

22. Opinion of Richard I. Bloch, Esq, In the Matter of the Seniority Integration Arbitration Between The Pilots of Pinnacle Airlines And The Pilots of Colgan Air And The Pilots of Mesaba Airlines, June 16, 2011.

23. Objection Of Air Line Pilots Association, International To Debtor's Motion To Reject Collective Bargaining Agreements With The Air Line Pilots Association, International And The Association Of Flight Attendants-CWA Pursuant To 11 U.S.C. §1113, October 4, 2012.

24. Reply Declaration of Patrick Ryan, October 12, 2012.

# APPENDIX B

## EXHIBIT 3:  PINNACLE CRJ-900 SENIORITY PENALTY ACCOUNTING FOR THE BLOCH AWARD

|  | Pilot Cost per Pilot Blockhour | Pilot Cost per Aircraft Block Hour | Captains | FO |
|---|---|---|---|---|
| Pinnacle/Mesaba CRJ-900 | $174.99 | | | |
| After 18.3% reduction | $142.97 | $285.94 | | |
| Allocation of pilot costs | | | 69.7% | 30.3% |
| Pilot Cost | | | $199.16 | $86.78 |
| Percentage wage and wage related* | | | 87.08% | 87.08% |
| Wage and wage related | | | $173.42 | $75.56 |
| Benefits (non wage related) | | | $25.74 | $11.22 |
| Seniority driven increase in average hourly pay | | | 4.66% | 0.20% |
| Seniority adjusted wage and wage related | | | $181.50 | $75.71 |
| Seniority adjusted cost | $147.08 | $294.17 | $207.24 | $86.93 |
| Change in pilot costs | 2.88% | 2.88% | 4.05% | 0.17% |

* Based on analysis of 6.28 RJ900 Data.CONFIDENTIAL.xlsx

Sources:  US DOT Form 41; 6.28 RJ900 Data.CONFIDENTIAL.xlsx; 6.46 120817 Data & Assumptions for ALPA.CONFIDENTIAL.xlsx; 6.28 RJ900 Data.CONFIDENTIAL.xlsx; 2.5 120503 - Pinnacle - Labor cost savings summary.pdf, 6.44 120816 Buildup of PNCL cost disadvantage (for data room).xlsx; Opinion of Richard I. Bloch, Esq, In the Matter of the Seniority Integration Arbitration Between The Pilots of Pinnacle Airlines And The Pilots of Colgan Air And The Pilots of Mesaba Airlines, June 16, 2011.

Notes:  Pinnacle includes Pinnacle and Mesaba.

## APPENDIX C

### EXHIBIT 4:  ESTIMATION OF GOJET FLIGHT ATTENDANT SENIORITY-WEIGHTED AVERAGE WAGE RATE WITH UPDATED GOJET PAY RATES

**Number of GoJet Flight Attendants**

|  | Seniority | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | Rates |
|---|---|---|---|---|---|---|---|---|---|---|
| 900 FA | 20 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | $28.00 |
| 900 FA | 19 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | $28.00 |
| 900 FA | 18 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | $28.00 |
| 900 FA | 17 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | $28.00 |
| 900 FA | 16 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | $28.00 |
| 900 FA | 15 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | $28.00 |
| 900 FA | 14 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | $28.00 |
| 900 FA | 13 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | $28.00 |
| 900 FA | 12 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | $28.00 |
| 900 FA | 11 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | $28.00 |
| 900 FA | 10 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | $27.50 |
| 900 FA | 9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | $27.00 |
| 900 FA | 8 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 | $26.00 |
| 900 FA | 7 | 0 | 0 | 0 | 0 | 0 | 0 | 3 | 31 | $25.00 |
| 900 FA | 6 | 0 | 0 | 0 | 0 | 0 | 3 | 39 | 15 | $24.00 |
| 900 FA | 5 | 0 | 0 | 0 | 0 | 4 | 49 | 18 | 13 | $23.00 |
| 900 FA | 4 | 0 | 0 | 0 | 5 | 61 | 23 | 17 | 41 | $22.00 |
| 900 FA | 3 | 0 | 0 | 6 | 77 | 29 | 21 | 52 | 53 | $20.50 |
| 900 FA | 2 | 0 | 8 | 96 | 36 | 26 | 65 | 66 | 43 | $19.00 |
| 900 FA | 1 | 10 | 120 | 45 | 32 | 81 | 82 | 54 | 165 | $18.00 |
| Target Sum | Total | 10 | 128 | 147 | 150 | 201 | 243 | 248 | 363 | |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Number of Aircraft | 1 | 13 | 15 | 15.25 | 20.5 | 24.75 | 25.25 | 37 |
| Longevity | 1.0 | 1.1 | 1.7 | 2.4 | 2.4 | 2.6 | 3.0 | **2.7** |
| Weighted Average Hourly Pay | | | | | | | | **$20.01** |

Source: U.S. DOT Form 41; Declaration of Daniel Akins, Page 29, Oct 5, 2012.

### EXHIBIT 5:  REVISED ESTIMATE OF PINNACLE VS. COMPASS AND GOJET WAGE-RELATED FLIGHT ATTENDANT COSTS USING UPDATED GOJET PAY RATES

| | Average Seniority | [A] Weighted Average Hourly Pay | [B] Burdening Ratio | [C] = [A] x [B] Weighted Average Pay and Benefits | [D] Flight Attendants per Aircraft | [E] Hours Aircraft Flown per Day | [F] Paid to Block Ratio | [G] = [C] x [D] x [E] x [F] x 365 Annual Flight Attendant Flying Cost per Aircraft | Difference from Pinnacle |
|---|---|---|---|---|---|---|---|---|---|
| Pinnacle | 5.96 | $23.04 | 110% | $25.34 | 2 | 9.5 | 1.25 | $219,693 | |
| Compass | 2.96 | $19.25 | 110% | $21.18 | 2 | 9.5 | 1.25 | $183,605 | -$36,089 |
| GoJet | 2.66 | $20.01 | 110% | $22.02 | 2 | 9.5 | 1.25 | $190,852 | -$28,841 |

Source: U.S. DOT Form 41: 6.44 120816 Buildup of PNCL cost disadvantage (for data room).xlsx: Pinnacle.

v